[No. 11014. In Bank.—February 25, 1886.]

HIRAM PEASLEY, RESPONDENT, *v.* JAMES McFADDEN ET AL., APPELLANTS.

POSSESSION OF LAND BY LESSEE—NOTICE OF EQUITIES OF LESSOR.—The possession of land by a lessee is notice to a purchaser of whatever equities his lessor may have therein.

AGREEMENT FOR SALE OF LAND—MISTAKE IN EXECUTION OF—PLEADING—CROSS-COMPLAINT.—The action was brought to recover the possession of land. The defendant filed a cross-complaint setting up a written agreement for the sale of certain land to him by the grantor of the plaintiff,

and alleged in effect that at the time of the agreement both the parties thereto intended that it should, and understood that it did, include the land sued for, but that the same was omitted therefrom by mistake. *Held*, in the absence of a demurrer, that the mistake in the execution of the agreement was sufficiently alleged.

ID. — CONSIDERATION IMPLIED IN WRITTEN AGREEMENT. — Under sections 1614 and 1615 of the Civil Code, such an agreement need not recite an adequate consideration, nor need the defendant in pleading it allege any consideration for its execution. If it was not based upon a sufficient consideration, the burden was upon the plaintiff to plead and show that fact.

APPEAL from a judgment of the Superior Court of El Dorado County, and from an order refusing a new trial.

The facts are stated in the opinion.

*George G. Blanchard*, and *Charles A. Swisler*, for Appellants.

The cross-complaint sufficiently alleged the mistake in the execution of the agreement. (*Spare* v. *Home Mut. Ins. Co.*, 9 Saw. 142; *Durham* v. *Fire & Mar. Ins. Co.*, 10 Saw. 526; *Lyman* v. *United States Ins. Co.*, 17 Johns. 373; *Barfield* v. *Price*, 40 Cal. 535.)

*M. P. Bennett*, for Respondent.

The mistake was not sufficiently alleged. (*Story* v. *Conger*, 36 N. Y. 673; *Wright* v. *Shafter*, 48 Cal. 275; *Kent* v. *Snyder*, 30 Cal. 674; *Barfield* v. *Price*, 40 Cal. 542.)

BELCHER, C. C. — This is an action of ejectment to recover the possession of a small lot of land in El Dorado County. The lot is parcel of about fourteen acres of land known as the Nashville Placer Claim, which one John C. Ensey sold and conveyed to the plaintiff on the twenty-fifth day of October, 1882. At that time the lot was covered by a building known as the Gem Saloon, which had been erected thereon by the defendant Duncan, and was occupied by the defendants McFadden and Heald as his tenants.

The Nashville Placer Claim was patented to Ensey by the government of the United States on the fifteenth day of September, 1882, under an application made therefor by him at some time prior to the eighteenth day of March, 1878.

When the application was made, and for several years before that, Duncan had been in possession of and had claimed to own a part of the land embraced in the application, including the lot in question.

As early as 1866 he erected a building on the land adjoining this lot on the north, in which he carried on the business of merchandising until 1874.

He also erected a barn and other buildings which he used in connection with his store.

The store, barn, and other buildings were inclosed by a fence. The lot in question was not within the inclosure, but he used it to pile wood upon and boxes from his store, and also kept there some barrels of water for use in case of fire.

In 1874 he leased the store and other buildings to defendant Heald, who has continued ever since to occupy them as his tenant. Up to the time the Gem Saloon was built, Heald used the land on which it stands for the same purposes that Duncan had used it.

On the 18th of March, 1878, Duncan wrote and read to Ensey, and Ensey then signed, a contract by which, after reciting that he had made application for a patent for the Nashville mine, he agreed and bound himself " for and in consideration of the sum of one dollar to me in hand paid, that as soon as I obtain a patent of said described land I will make out a good and sufficient deed to R. H. Duncan of said land he, said Duncan, has inclosed, and upon which his store, barn, dwelling, and warehouse stand."

As soon as the contract was signed it was placed in Heald's safe, and was kept there, and not seen by Duncan, until some time in 1882, after Ensey sold to plaintiff,

when hearing that Ensey had received his patent, he got it out and read it. Then for the first time he discovered that in writing the agreement he had omitted from the description of the land he had intended to describe the land and premises sued for in this action.

When the contract was made, and for a long time prior thereto, Duncan claimed to own the premises in dispute here, and he intended to have included the same in the written agreement, but unintentionally and by mistake omitted to do so. Ensey knew of the claim made to the said premises by Duncan, and knew from what had been said between them, prior to the date of the agreement, that Duncan intended to require of him a conveyance of the same as a part of the premises which he, Duncan, claimed within the lines of the Nashville Placer Claim. Ensey also had reason to know and suspect, at the time he signed the agreement, that Duncan had made a mistake in drawing it, and through such mistake had omitted the premises in dispute.

The complaint is an ordinary complaint in ejectment. The defendants answered, denying the plaintiff's ownership of the premises sued for, and the defendant Duncan, by way of cross-complaint, set out the contract for a deed, herein before referred to, and then alleged "that by mistake said agreement does not correctly describe the premises so to be conveyed. . . . .

"That at the time said agreement was executed, the said parties thereto intended, and it was by them understood, that the premises therein described and agreed to be conveyed as above set forth should include the whole of the land and premises described in plaintiff's complaint, but that the same was omitted by mistake, and in order that the said agreement may conform to the intention of the said parties thereto at the time of its execution, it is necessary that the same be reformed and made to read as follows."

The plaintiff answered the cross-complaint by denying

fully that there was any mistake made in the drawing or execution of the agreement referred to, or that it was understood or agreed by the parties thereto that it should or did include the whole or any part of the premises described in plaintiff's complaint.

The case was then tried, and the facts found substantially as above stated.

As conclusions of law the court found:—

"1. The answer and cross-complaint does not show a mistake within the meaning of section 3399 of the Civil Code.

"2. That the agreement does not show an adequate consideration.

"3. That the plaintiff is entitled to judgment for the possession of the premises sued for."

Judgment was entered in favor of the plaintiff, and from that judgment the appeal is taken and rests upon the judgment roll.

Two questions are presented for consideration in the case:—

1. Was the mistake in the written agreement so pleaded that the equity powers of the court could be called into exercise to reform it?

2. The agreement being reformed so as to include the premises in controversy, did it furnish any defense against the plaintiff's claim to possession?

There can be no doubt that when the plaintiff bought the property from Ensey, he took with notice of Duncan's claim to it. The lot was then entirely covered by the Gem Saloon, which Duncan had built and was occupying by his tenants. This was full notice to the plaintiff of Duncan's equities. (*Lestrade* v. *Barth*, 19 Cal. 660; *Dutton* v. *Warschauer*, 21 Cal. 127; *Pell* v. *McElroy*, 36 Cal. 271; *Talbert* v. *Singleton*, 42 Cal. 390.)

Duncan was entitled, therefore, to have the agreement reformed and enforced as against the plaintiff, if he would have been as against Ensey, provided Ensey had not sold but had commenced the action.

It is urged on the part of the respondent that the cross-complaint is insufficient to justify a reformation of the written agreement, because it does not show that there was any mutual mistake of the parties in making it, or a mistake of one party which the other at the time knew or suspected, and because the allegation that at the time the agreement was executed it was intended and understood by the parties thereto that the premises therein described and agreed to be conveyed should include the land sued for, is contradictory and unintelligible. It is clear that the cross-complaint was not artistically drawn, and if it had been tested by a demurrer, on the ground that it was ambiguous, uncertain, and unintelligible, it would probably have been held bad. It was not, however, demurred to, but its averments were denied, and upon the issues thus tendered the case was submitted. When thus tested, was it fatally defective?

A written contract may be reformed when, through a mutual mistake of the parties thereto, or a mistake of one party, which the other at the time knew or suspected, it does not truly express the intentions of the parties. (Civ. Code, sec. 3399.)

A mistake, as defined by the code, is: —

"1. An unconscious ignorance or forgetfulness of a fact, past or present, material to the contract; or,

"2. Belief in the present existence of a thing, material to the contract, which does not exist, or in the past existence of such a thing which has not existed." (Civ. Code, sec. 1577.)

In the construction of a pleading for the purpose of determining its effect, its allegations must be liberally construed, with a view to substantial justice between the parties, and in every stage of an action, the court must disregard any error or defect in the pleadings which does not affect the substantial rights of the parties. (Code Civ. Proc., secs. 472, 475.)

As we read it, then, the cross-complaint in effect

alleges that at the time the agreement was executed both parties intended that it should, and understood that it did, include the land sued for here, and that this land was omitted from the agreement by reason of an unconscious ignorance or forgetfulness of the fact that it was not included, or a belief that it was then included, therein. This, we think, must be held sufficient as the case was presented.

The point that the agreement does not show an adequate consideration, and therefore cannot be reformed and enforced, is not well taken.

At common law, an adequate consideration was absolutely necessary to give validity to contracts not under seal; and in case of suits upon them, the consideration was required to be alleged and proved. It was not so with sealed instruments; they imported a consideration which was presumed to be adequate.

We have changed the rule of the common law in this state with reference to unsealed instruments. Our Civil Code provides: —

"Sec. 1614. A written instrument is presumptive evidence of a consideration.

"Sec. 1615. The burden of showing a want of consideration sufficient to support an instrument lies with the party seeking to invalidate or avoid it."

It was not necessary, therefore, that the agreement set forth in the cross-complaint should show an adequate consideration, or that the defendant in pleading it should set forth any consideration for its execution.

If it was not based upon a sufficient consideration, the burden was upon the plaintiff to plead and show that fact.

Failing to do that, his contention here cannot be supported.

The judgment should be reversed and the cause remanded.

SEARLS, C., and FOOTE, C., concurred.

The Court.—For the reasons given in the foregoing opinion, the judgment is reversed and cause remanded.

McKinstry, J., dissented.

Rehearing denied.