[Civ. No. 1302. Third Appellate District.—December 11, 1914.]

## O. H. SCHIRMER, Respondent, v. UNION BREWING AND MALTING COMPANY (a Corporation), Appellant.

CONTRACTS—SALE OF GOODS—MISTAKE—REFORMATION OF CONTRACT.— In an action upon a written contract to recover a balance alleged to be due on the purchase price of certain goods, where the defendant by its cross-complaint admitted the execution of the agreement but alleged that by mistake the contract omitted a condition and guarantee in fact agreed upon by the parties that the sale was subject to a freight rate between the city of Cleveland and the city of San Francisco of one dollar and forty cents per hundred, whereas the rate charged to and paid by the purchaser was three dollars per hundred, and but for said condition and guarantee the purchaser would not have made the purchase, evidence offered in support of these allegations of the cross-complaint was admissible, and under such evidence defendant was entitled to a reformation of the contract to express the real intention of the parties.

ID.—WRITTEN CONTRACT—MISTAKE—RIGHT OF REFORMATION.—When, through fraud or a mutual mistake of the parties, or a mistake of one party, which the other at the time knew or suspected, a written contract does not fully express the intention of the parties, it may be revised upon the application of a party aggrieved so as to express that intention, so far as it can be done without prejudice to the rights acquired by third persons, in good faith and for value; and in revising such written instrument, the court may inquire what the instrument was intended to mean, and what were intended to be its legal consequences, and is not confined to an inquiry what the language of the instrument was intended to be.

ID.—PLEADING—FAILURE TO PLEAD MUTUAL MISTAKE—WAIVER.—In such a case the contention that, as the defendant did not plead the mistake as mutual, he was not entitled to a reformation, cannot be maintained, where the plaintiff did not demur specially but answered the averments in the pleadings, as there is no rule that would preclude defendant from proving the mistake if entitled to a reformation of the contract.

ID.—MATERIALITY OF MISTAKE.—While the fact concerning which the mistake was made in such a case must be material to the transaction, and not merely incidental, to entitle the party to a reformation of the contract, where the pleading alleged that but for the guarantee as to the freight rate defendant would not have made the purchase, it was of the essence of the agreement and was material.

ID.—DELIVERY F. O. B.—LATENT AMBIGUITY.—A reformation of the contract in such a case by the insertion of the terms alleged to have been omitted from it did not create a latent ambiguity or contra-

dict the term thereof that the purchaser was to pay for the goods "the sum of $3800.00 f. o. b. cars Cleveland, Ohio."

ID.—TERM F. O. B.—MEANING OF.—It is understood in mercantile parlance that the term "f. o. b." stands for "free on board"—that is, when used in an agreement that goods are to be delivered at a certain place "f. o. b." means that they will be delivered to a carrier at that place free of drayage charges, etc.; and the phrase is only evidence, and not conclusive, that the goods were to be so delivered to the purchaser.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order refusing a new trial. Bradley V. Sargent, Judge presiding.

The facts are stated in the opinion of the court.

G. Gunzendorfer, for Appellant.

Henry G. W. Dinkelspiel, and John R. Jones, for Respondent.

CHIPMAN, P. J.—Plaintiff brings the action as assignee of the Loew Manufacturing Company, a corporation, for the sum of four hundred and eighty-one dollars, which plaintiff alleges, in his complaint, is the balance due on a written contract, entered into on January 22, 1907, whereby defendant agreed to purchase from plaintiff's assignor "one No. 4 New Era Pasteurizer, having a capacity of one hundred barrels, together with trucks, beams, regulators, thermostats and thermometer, centrifugal pump and pulley, for the agreed sum of $3,800.00."

It is alleged that said corporation delivered said merchandise to defendant and that defendant has paid therefor the sum of three thousand three hundred and nineteen dollars, and no more, leaving four hundred and eighty-one dollars due and unpaid.

Defendant demurred generally and specially which, being overruled, it answered; admitted the execution of a written contract on the day claimed, which is attached to the complaint as part thereof, for the purchase of said articles at the price named, "but it was agreed by said Loew Manufacturing Company and this defendant that the railroad rate for transportation of the said pasteurizer would be one dollar and forty cents per hundred pounds, which said rate said Loew Manu-

facturing Company guaranteed to defendant, and that said rate was the sole consideration for the execution of said agreement and the purchase by defendant from said Loew Manufacturing Company of the said pasteurizer and appurtenants''; that when said merchandise was received by defendant, the transportation company demanded three dollars per hundred pounds, being one dollar and sixty cents per hundred pounds in excess of the agreement and guarantee made by said Loew Company; that defendant was obliged to pay such excess amounting to four hundred and eighty-one dollars and immediately thereafter so notified said Loew Company and demanded credit for the same.

By way of affirmative relief and cross-complaint, defendant sets forth the said written contract; alleges that plaintiff ''at all times hereinafter mentioned has been and now is the agent of said Loew Manufacturing Company and that plaintiff has at all times hereinafter mentioned had actual and personal knowledge of all the facts hereinafter alleged.'' Defendant, further answering, alleges: That defendant entered into a written agreement with said Loew Manufacturing Company, ''acting through its agent, the plaintiff above named, as its resident agent, whereby this defendant agreed to buy from said Loew Manufacturing Company and said company agreed to sell to this defendant (describing the property) but conditioned nevertheless and subject to a freight rate from said city of Cleveland, Ohio, to the city of San Francisco at one and forty one hundredths ($1.40) dollars per hundred pounds''; that but for said agreement and guarantee defendant would not have made the purchase ''and this defendant at all times believed that the said contract and agreement with the said Loew Manufacturing Company contained the said agreement and guarantee that the freight rate of said pasteurizer and appurtenants would be $1.40 per hundred pounds''; that ''it was the agreement and intention of this defendant and of said the Loew Manufacturing Company that the said written agreement should truly express and set forth all the terms and conditions of the aforesaid agreement between them, particularly that portion of the agreement by which said Loew Manufacturing Company agreed and guaranteed that the freight rate of said pasteurizer and appurtenants should be at the rate of one and forty-one hundredths ($1.40) dollars per hundred pounds''; that ''by mistake and

inadvertenance said written agreement did not truly represent nor fully and truly express the agreement and particulars thereof with reference to the said freight rate''; that ''defendant believed that the said contract and agreement and guarantee with respect to the said freight rate was contained in and formed part of said written agreement, and this defendant did not discover that the same was omitted therefrom until after the commencement of this action''; that unless said contract is reformed and corrected 'so as to express the true intention of defendant and of the said Loew Manufacturing Company as alleged defendant will be damaged in the sum of four hundred and eighty-one dollars. Defendant prays that said contract be reformed to express the true intention of the parties thereto and as in the cross-complaint alleged and when so corrected it be adjudged that neither plaintiff nor said Loew Manufacturing Company has any claim against defendant.

The contract is of considerable length and need not be set forth in its entirety. Among other provisions are the following: ''Said party of the second part (defendant) hereby agrees to pay said party of the first part as the purchase price, the sum of $3,800.00 f. o. b. Cleveland, Ohio. . . . Party of the first part retains title of the property until fully paid in cash. This agreement is not binding on the party of the first part until approved by its own officers at Cleveland, Ohio.'' It was signed ''The Loew Manufacturing Company per Otto H. Schirmer, party of the first part'' (plaintiff in the action) and by defendant.

Plaintiff admits the execution of the contract but denies all the averments of the answer and cross-complaint relating to the alleged mistake; alleges that said contract was entered into without any guarantee whatever as to freight rate or any guarantee other than as set out in the contract; on information and belief alleges that defendant knew at all times that said contract did not contain any agreement ''as to the amount of freight rate or as to freight rate at all'' and that said agreement did fully and truthfully express all the terms and conditions agreed upon by the parties thereto.

The court found that the agreement pleaded was entered into as written and the goods delivered as agreed upon and that defendant had paid therefor in full except four hundred and eighty-one dollars; that said agreement as written ex-

presses all the agreement entered into with reference to the purchase of said goods and there was no other consideration save as expressed in said written agreement; that defendant is not entitled to have the agreement reformed and corrected. Judgment accordingly passed in plaintiff's favor for four hundred and eighty-one dollars. Defendant appealed from the judgment and from the order denying its motion for a new trial. As we understand, the appeal now pending is from the order, the appeal from the judgment having been dismissed.

It is not disputed that defendant paid for the goods except the amount now claimed of four hundred and eighty-one dollars, which it withholds for reasons fully set forth in its answer and cross-complaint. At the trial defendant's counsel, by numerous appropriate questions to witnesses endeavored to show the facts upon which defendant based its alleged mistake. The objection to the questions was that they were immaterial and irrelevant "and as seeking to vary a written contract." Defendant's offer of proof was full and specific and embraced facts from which an inference might be drawn that the agreement was as alleged by defendant and that by the mistake of the parties it failed to include the alleged provision concerning the freight rate. A letter to defendant, written by plaintiff, who was, as defendant offered to prove, the agent of the Loew Manufacturing Company and signed the contract for it, was offered in evidence, in which letter he stated, among other things: "I have written Cleveland about how you feel on the frt. rate, and that thru my saying $1.40 to you (defendant), you gave me the order." All the offers of proof were refused and objections to all questions tending to show that there was an agreement such as defendant alleged and a mistake in its not so showing and that defendant did not discover the omission of the particular covenant relied upon until the commencement of the action were sustained on the ground that "it was seeking to vary the terms of a written contract." As a result of these rulings the findings were necessarily for plaintiff, and it is because of these findings and of these rulings defendant now urges that the trial court erred.

The question here is whether the evidence was offered and had the effect to vary the terms of the contract, or whether the writing itself, through mistake, did not express the inten-

tion of the parties who entered into it, and does not, therefore, contain the real contract between the parties. If the latter, defendant was entitled to reformation. (*Kee* v. *Davis*, 137 Cal. 456, 458, [70 Pac. 294, 671].)

"When, through fraud or a mutual mistake of the parties, or a mistake of one party, which the other at the time knew or suspected, a written contract does not fully express the intention of the parties, it may be revised on the application of a party aggrieved, so as to express that intention, so far as it can be done without prejudice to rights acquired by third persons, in good faith and for value." (Civ. Code, sec. 3399.) "In revising a written instrument, the court may inquire what the instrument was intended to mean, and what were intended to be its legal consequences, and is not confined to the inquiry what the language of the instrument was intended to be." (Civ. Code, sec. 3401.)

Mr. Pomeroy says: "The general doctrine is firmly settled as one of the elementary principles of the equitable jurisdiction, that a court of equity will grant its affirmative or defensive relief, as may be required by the circumstances, from the consequences of any mistake of fact which is a material element of the transaction, and which is not the result of the mistaken party's own violation of some legal duty, provided that no adequate remedy can be had at law" (2 Pomeroy's Equity Jurisprudence, 3d ed., sec. 852) ; and "the mistake may arise after the parties have verbally concluded their agreement and may occur in reducing that agreement to writing, by erroneously adding, omitting, or altering some term." (2 Pomeroy's Equity Jurisprudence 3d ed., sec. 853). If the contract is such as to admit of reformation, parol evidence may be resorted to to prove the mistake. (2 Pomeroy's Equity Jurisprudence 3d ed., sec. 862.)

Respondent does not seriously question the soundness of these principles. He contends, among other things, that only mutual mistakes may be corrected; that the defendant did not plead the mistake as mutual and hence defendant is not entitled to reformation. Had plaintiff demurred specially the court may have compelled the defendant to state specifically whether the mistake was mutual or the mistake of one party which the other at the time knew or suspected. (Civ. Code, sec. 3399.) He answered the averments in the pleading and we know of no rule that would preclude defendant from prov-

ing the mistake, such as it was, if entitled to reform the contract. (*Peasley* v. *McFadden*, 68 Cal. 616, [10 Pac. 179].)

Respondent contends that the order should stand because the alleged mistake was not material to the contract and hence the cross-complaint did not state facts sufficient to constitute a cause of action for reformation. The contract provided that defendant was to pay for the goods "the sum of $3,800.00 f. o. b. cars Cleveland, Ohio," which it is alleged was "conditioned nevertheless and subject to a freight rate from the said city of Cleveland to the city of San Francisco of one and forty one hundreths dollars per hundred pounds."

The argument is that the writing is silent upon the subject and expressly provides for delivery of the goods f. o. b. at a price fixed; that the matter of freight rate was a matter incidental to and not a material part of the contract. Quoting from Mr. Pomeroy, it is said: "The fact concerning which the mistake is made must be material to the transaction affecting its substance and not merely its incidents; and the mistake itself must be so important that it determines the conduct of the mistaken party or parties. If a mistake is made by one or both parties in reference to some fact which though connected with the transaction, is merely incidental and not a part of the very subject-matter, or essence of its terms . . . the mistake will not be ground for any relief affirmative or defensive." (2 Pomeroy's Equity Jurisprudence, 3d ed., sec. 856.)

Defendant alleged that but for the guarantee that the freight rate would not exceed one dollar and forty cents per hundred pounds defendant would not have made the purchase. The allegations make this matter something more than an incident. To defendant it was of the essence of the agreement, as we must assume from the averments of the cross-complaint. The transportation cost was "a material element of the transaction." The difference in the freight rate alleged to have been agreed upon and the rate defendant was compelled to pay was more than twelve per cent of the cost of the goods and more than double the guaranteed rate.

It would be an exceptional case where the court would be justified in refusing evidence of mistake because upon the face of the pleadings, in the opinion of the court, the asserted mistake was not material. Ordinarily, this fact should be developed and determined by the evidence at the trial. It

would seem but reasonable that what the parties in fact have agreed to should be treated as by them intended to be material. "The written instrument is not required to be certain and complete in any respect; the only condition is that there shall be an honest effort to reduce the contract to writing, where the statute of frauds requires it, and that the mistake shall be such as is recognized in this branch of equitable jurisdiction." (*House* v. *McMullen,* 9 Cal. App. 670, [100 Pac. 347].)

It is further contended that "the reformation of the contract by the insertion of the added term would create a latent ambiguity; it would be contradictory of the term 'f. o. b. Cleveland, Ohio.' " It is understood in mercantile parlance that these letters thus used stand for "free on board"—that is, when used in an agreement that goods are to be delivered at a certain place f. o. b. means that they will be delivered to a carrier at that place free of drayage charges, etc. (*Muskegon Curtain Roll Co.* v. *Keystone Mfg. Co.,* 135 Pa. 732, [19 Atl. 1008]) ; and the phrase is only evidence, and not conclusive, that the goods were to be so delivered to the purchaser. (*Dannenmiller* v. *Kirkpatrick,* 201 Pa. 218, [50 Atl. 928]. · Cited in "Words and Phrases.")

Respondent also contends that the reformation would not only create a latent ambiguity but would leave the instrument in such condition as "would require the aid of equity to construe and harmonize." We cannot see that the introduction in the contract of the simple statement that "first party guarantees that the freight rate from Cleveland to San Francisco, shall not exceed $1.40 per hundred," would have conflicted with the provision "f. o. b. Cleveland," which only meant that the goods were to be delivered to the carrier at the place (Cleveland) free of drayage charges, etc. The phrase had no reference to the freight rate between the two cities and hence the additional clause would not vary the terms expressed. There may have been an implication that the buyer was to pay this freight, but there would have been no contradiction of terms had the contract guaranteed a freight rate of one dollar and forty cents per hundred pounds. In fact, evidence was offered to show that this had been the rate, and respondent's assignor might well have assumed that this rate was in force at the time it entered into the contract and hence made the guarantee as is alleged it did. The parties,

had they so intended, might have provided that the goods should be delivered f. o. b. San Francisco. No ambiguity would have existed in that case, nor can we see that there would be by making the delivery at Cleveland f. o. b. with a guarantee that the freight rate to San Francisco would not exceed one dollar and forty cents per hundred pounds. The parties were free to make any contract they saw fit as to the carriage charges after delivery f. o. b., either that the seller or the buyer should pay them, and they had the equal right to agree should the buyer pay them that they should not exceed a certain cost. The contract provided that title should remain in the seller until the property was fully paid for and the seller was to send an expert to San Francisco to set up the machine besides agreeing to do certain stipulated things after it had reached appellant's premises. It seems to us that the guarantee pleaded was such as equity should enforce by giving the defendant the opportunity to make good its averments of fact, if it can, and that it is entitled to have the contract reformed, and to have the defensive relief given him as prayed for, if the facts should warrant it.

The order is reversed.

Hart, J., and Burnett, J., concurred.