[Civ. No. 8069. First Appellate District, Division Two.—January 13, 1932.]

RICHARD CANTLAY et al., Respondents, v. OLDS AND STOLLER INTER-EXCHANGE (an Inter-Insurance Exchange), Appellant.

J. E. Reardon, William M. Abbott, K. W. Cannon, Michael F. Shannon and Thomas A. Wood for Appellant.

J. B. Irsfeld and Douglas Fawcett for Respondents.

BURROUGHS, J., *pro tem.*—This is an action brought for the purpose of reforming a contract of insurance, and for the recovery of a money judgment in case of its reformation. Judgment went for the plaintiffs and the defendant appeals.

The policy of insurance was issued to the Geo. L. Eastman Company, a corporation, hereinafter called the Eastman Company, by the defendant Olds and Stoller Inter-Exchange, an inter-insurance exchange, organized and existing under that certain act of the legislature of the state of California, known as ''The Reciprocal or Inter-Insurance Act of the State of California.'' (1 Deering's Gen. Laws (1923), p. 1346, Act 3734.) Said company will hereinafter be called the Insurance Company. The plaintiffs in this action are Richard Cantlay and Joseph Tanzola, copartners, engaged in business under the firm name and style of Cantlay & Tanzola, and will be hereinafter referred to by the copartnership name.

The evidence discloses that prior to February 15, 1925, Cantlay & Tanzola were the owners of certain motor-trucks and were engaged in the business of hauling building material for the Eastman Company, in the city of Los Angeles. That both of said parties carried insurance policies with the Insurance Company; that these policies indemnified the holders for public liability and property damage. The policy of insurance held by Cantlay & Tanzola described each truck upon which they were insured, to a certainty, and damages caused by such truck or trucks were the only ones for which a recovery could be obtained. On the date above mentioned, Cantlay & Tanzola's policy was canceled and a new policy was issued to the Eastman Company, which new policy was intended to cover Cantlay & Tanzola's trucks and other trucks used in the service of the Eastman Company. This

was called a "blanket policy" because, without individually describing the trucks, it covered all trucks used in the service of the Eastman Company. The premium for the policy was based upon a pay-roll basis as hereinafter described. The old policy held by Cantlay & Tanzola was canceled and the new one issued under the following circumstances: S. J. Ogilvie testified that he was the manager in full charge of all the business of the Insurance Company at its branch office in the city of Los Angeles, at the time of the transaction, which is the subject matter of this suit. Upon learning that Tanzola was associated with Cantlay in operating a trucking business and hauling exclusively for the Eastman Company, he held a conference with Tanzola concerning the issuance of a different policy of insurance from the one carried. He testified that "The policy was requested to cover public liability and property damage, liability of Cantlay & Tanzola and George L. Eastman, a corporation in Hollywood. This policy was to be written on a hired car basis, that being a customary term for this particular type of policy. A specified list of cars was not required in the policy, the premium charge being based on the cost of hire of the trucks in the actual payroll of the preceding year being used as a basis for determining the premium for putting the policy into effect. It was particularly pointed out at this time that George L. Eastman & Company did not own any trucks, but all the hauling that was being done that either Cantlay & Tanzola and certain other parties owned the trucks, and the coverage was requested to protect Cantlay & Tanzola, and the other parties while acting either as employees or agents for George L. Eastman, a corporation."

The witness further testified that the new policy issued was intended to cover Cantlay & Tanzola no matter in what capacity they were acting for the Eastman Company. There was a provision in the policy covering additional insurance. There was a standard clause that the policy was to extend protection under the liability and property damage clause, to the employees or agents of the named assured. The witness believed, and it was his intent and understanding that the policy should and would cover Cantlay & Tanzola while their trucks were hired by the Eastman Company. The witness further testified that Cantlay & Tanzola and various

other individuals who were protected by the policy, paid the premium. The names of the various trucks owners were on the original policy opposite the description of the specific trucks they owned. The witness also knew that plaintiffs had these old policies with the defendant covering specified trucks, and that prior to the issuance of the policy now sued upon he told Mr. Tanzola that if he would cancel the old policy and come in under the blanket policy he would be fully protected; that he stated to Mr. Tanzola that the old policy should be canceled so there would be no concurrent insurance; that Mr. Tanzola canceled his policy at the request of the witness; that through mistake the new policy that was issued to the Eastman Company contained a clause which excluded from the benefits of the policy all truck owners except the Eastman Company. Said policy was delivered to Toberman & Company, who were insurance brokers and were the agents of all the parties named. Mr. Tanzola immediately objected to the above clause and the policy was returned to the Insurance Company for correction, and, under the direction of Ogilvie the objectionable clause was stricken out and the policy was then returned to Cantlay & Tanzola as so amended. Upon its return it was not carefully read by Cantlay & Tanzola because the objectionable clause had been stricken out and they believed they were covered by the policy.

It also appears from the evidence that during the life of the new policy, claims were filed with the Insurance Company, by Cantlay & Tanzola which were covered by the policy of insurance and all of them were settled by the Insurance Company without any objection being made that said claims were not covered by the policy. It also appears from the evidence that two days before the issuance of the policy in suit said S. J. Ogilvie wrote a letter to the home office of the Insurance Company concerning the issuance of this policy, to which letter there was attached a postscript as follows "We would like to bring out one additional point, that it is the understanding on this policy that only George L. Eastman Company or employees acting as agents for George L. Eastman Company are covered by this policy. This means that the owner of the truck is not covered, unless at the time of the claim the truck was actually being used in the service of the George L. Eastman Co. This we believe

has been one point in dispute regarding this policy." In reply to this letter the defendants telegraphed to their manager Ogilvie that it was satisfactory to issue the policy with that understanding.

The witness Ogilvie further testified that it was the intention of the Insurance Company that Cantlay & Tanzola be covered by this policy whether or not they were employed as agents or independent contractors, but only when hauling for the Eastman Company, and if it had contained such a clause, it would have been in accordance with the agreement had with them. He further testified that the rate of premium as charged contemplated that kind of coverage, no matter whether plaintiffs were employees or independent contractors. Ogilvie considered that they were covered by the policy.

The policy as issued also contained a clause that the word "subscriber" whenever used in the policy included among others, "All employees operating any automobile described herein while acting within the scope of their employment." In striking out the clause objected to by the plaintiffs herein, Ogilvie testified that it was his belief that the clause relating to the "subscriber" as above stated, covered the plaintiffs herein, under the term "Additional Assured". It further appears satisfactory from the evidence that Cantlay & Tanzola were "subscribers". There is also a provision in the policy as follows: "Alterations or waiver. No condition or provision of this policy shall be altered or waived except by written indorsement by the attorney, nor shall notice to or knowledge possessed by any agent or other person be held to effect a waiver or change in any part of this policy."

Harry G. Bostwick was in the insurance department of C. E. Toberman & Co., who, as heretofore stated, was the agent for the Eastman Company, the plaintiffs and the defendants. He was present at a conference held with Mr. Tanzola and Mr. Ogilvie before February 15, 1925, in which Tanzola stated that Mr. Cantlay had been in conversation with Mr. Eastman concerning coverage that would take care of the truck drivers and truck owners. Mr. Ogilvie said that it could be done in a blanket policy. The evidence of this witness concerning this conversation was substantially

the same as that of the witness Ogilvie, as heretofore set forth.

Joseph Tanzola testified, among other things, that a few days before the 15th of February, 1925, Ogilvie and Bostwick came to him and told him that they could be insured through Eastman & Company, and that the premiums on the policy would be deducted from their gross earning, and asked them to cancel their old policy with the Insurance Company. Upon these representations the old policy was canceled and the new one issued; that he would not have canceled the old policy but for the representations of Ogilvie and Bostwick; that after this new policy was issued Cantlay & Tanzola had claims for damages which were paid by the Insurance Company without any objection or claim that they were not covered by the new policy; that at the time of the accident through which the judgments were obtained, the truck causing the damage was in the employ of the Eastman Company, hauling rock belonging to it, but that the trucks were not hired for any particular time. Eastman Company paid by the load and Cantlay & Tanzola paid the driver. At the time of the conference concerning this policy, Eastman suggested that he thought it would be a much better proposition to be covered in one blanket policy.

It also appears from the record that the Insurance Company hired attorneys to defend the suits in which the judgments were rendered, and that Cantlay & Tanzola were compelled to pay the judgments because of executions issued against them. The foregoing statement of the evidence is sufficient to pass upon the questions raised by the appellants.

The first alleged error presented by the appellants is that the complaint does not state facts sufficient to constitute a cause of action for reformation of the policy of insurance. They rely upon the case of *Auerbach* v. *Healy*, 174 Cal., p. 60 [161 Pac. 1157], as establishing the rules of pleading in such cases. We agree that said decision states the rule correctly.

It is contended that the complaint herein does not allege what the real agreement was between the parties; that it nowhere appears in the pleading what the real agreement was as reduced to writing, nor does it show wherein the agreement as reduced to writing fails to embody

the terms and conditions of the real agreement. That the complaint fails to state whether or not the mistake was mutual or whether it was a mistake of one party known to the other party. In response to these objections it is alleged in the complaint that it was agreed by both parties that the defendant should issue to the plaintiffs its "public liability and property damage insurance policy to said Geo. L. Eastman Co., as the named insured therein, and that the policy would extend to cover all persons from whom motor trucks were hired by said George L. Eastman Co.".

Thus we have one allegation as to what constituted the real agreement entered into by the parties. It is also alleged in the complaint that when demand was made upon the defendant that it pay the judgments, they were informed "that plaintiffs were not named as assured in said policy of insurance and that plaintiffs were therefore not protected by said policy of insurance and that under the terms of said policy as written, the policy did not extend to cover persons from whom motor trucks were hired by said Geo. L. Eastman Co.". Another allegation of the complaint concerns the cancellation and return of the policy to the defendants; of a demand upon the latter for a copy of the policy, and their refusal to submit a copy to the plaintiffs. There is another allegation "that the plaintiffs do not know whether or not said policy does in fact by its terms extend to cover persons from whom motor trucks were hired by said Geo. L. Eastman Co.". If the foregoing allegations do not apprise the defendants of what the policy as reduced to writing contained, it appears in their answer "That in and by the terms of said policy Geo. L. Eastman Co. alone was covered by the terms of said policy." Again it is alleged in the answer: "That neither of said plaintiffs were named as the assured in said policy and because neither of said plaintiffs was protected by the terms of said policy as written or as negotiated."

We think that the foregoing provisions of the complaint and answer do set forth what the contract of insurance contained after being reduced to writing. ▮ It is also claimed that the complaint fails to state whether the mistake was mutual or was one relied upon by one party and which the other at the time knew or suspected. In answer to this contention the complaint alleges that if said policy does not

in fact contain a provision to the effect that it covers persons from whom the Eastman Company hired trucks it was omitted therefrom by the defendants by mistake and the acceptance of said policy was due to the mistake of the plaintiffs and the Eastman Company in believing that said policy did in fact contain such a provision. This alleges a mutual mistake and disposes of that objection made by the appellants. ■ In addition to what has already been said, the demurrer to the complaint was general, no special grounds were alleged. Under such circumstances the pleading is sufficient if it contains the facts necessary to state a cause of action. This was the situation in *Peasley* v. *McFadden*, 68 Cal. 611 [10 Pac. 179], where the plaintiff seeking reformation of a written contract failed to allege that the mistake was mutual but the facts as pleaded were held sufficient upon which the actions could be maintained in the absence of a special demurrer for uncertainty, ambiguity or unintelligibility. In *Andrew F. Mahony* v. *Standard Gas Co.*, 187 Cal. 399, 408 [202 Pac. 146, 150], it was held that where there was a failure in the complaint to allege the character of the mistake, and a special demurrer for that reason, the court erred in overruling the demurrer, citing *Peasley* v. *McFadden, supra,* but it was held such error was not prejudicial, since such ruling did not affect any substantial rights of the defendant. (Citing Code Civ. Proc., sec. 475.) It was further said of the defendant, "Its answer indicates that it construed the complaint as alleging that the mistake in it mentioned was a mutual one, for it contains a denial that 'there was any mistake made by either the plaintiff or this defendant in the execution of the said contract'"; and in addition thereto, the following is stated: "and in this behalf defendant alleges that said contract embodies all and every condition, warranty, and reference intended by the parties to be contained therein". In the instant case, the rule applies with equal force. The complaint was framed upon the theory that the complaint was sufficient to state a cause of action founded upon a mutual mistake. Furthermore, the insurance policy was returned to the defendants and lost, and its contents were unknown to the plaintiffs. We think the complaint is sufficient and states a cause of action.

Appellants further claim that as the policy of insurance is between the Insurance Company and the Eastman Company, to compel a reformation on the demand of Cantlay & Tanzola, to grant the relief would in fact, amount to the court's making a new contract. It will be noted, however, that there is no attempt made to substitute new parties. The demanded reformation by Cantlay & Tanzola is for the purpose of showing their beneficial interest therein, according to the original agreement of the parties. In *F. G. Calhoun* v. *George G. Downs et al.*, 211 Cal. 766 [297 Pac. 548], which was an action to reform a contract, it appeared from the evidence therein that George Downs and wife were the owners of certain real property, and listed the same for sale with plaintiff F. G. Calhoun, a real estate broker, for the sum of $10,000, agreeing to give him a commission of $500 on said sale. In pursuance of said agreement the plaintiff procured one George P. Ahlborn, also one of the defendants, as a purchaser of said real estate. Downs and wife entered into a written agreement with the said Ahlborn whereby said Downs and wife agreed to sell and Ahlborn agreed to buy said real property for the sum of $10,000, and to pay the plaintiff a commission of $500. But, in reducing said agreement to writing, through the mutual mistake of both plaintiff and the defendants, the figures "500" after the dollar sign, and the words "F. G. Calhoun" after the word "to" in the agreement were omitted therefrom so that the last line read: "I agree to pay a commission of $——— to ———." A second agreement was thereafter entered into by the same parties whereby Downs agreed to sell the same property to Ahlborn for the sum of $9,500. The last-named agreement contained no provision for any real estate commission, but it did contain a paragraph to the effect that if any person claimed a commission for the sale of such property, it was to be paid by Ahlborn, and the latter undertook to indemnify the sellers against the payment of any such commission. Judgment was given in favor of the plaintiff and against both defendants for the sum of $500. In the foregoing case, the contract was reformed by inserting the name of the plaintiff and the figures "500" which would then state the true agreement between the parties. It will be observed that the agreement itself was not made by the parties seeking reformation,

but, like the case at bar, to set forth the interest of the plaintiff and then enforce their rights under contract as reformed.

In *Oatman* v. *Niemeyer*, 207 Cal. 424 [278 Pac. 1043, 1044], the court was considering an agreement between Oatman and one Garrison for the conveyance of certain real property to Oatman. The deed conveying the property left out the plaintiff's name and also the description of the property to be conveyed. The action itself was brought by Oatman against Niemeyer, as administrator of the estate of A. N. Garrison, deceased, to reform the deed. The court granted the relief prayed for, and in answer to the appellant's contention that the deed was wholly inoperative and void, said: "There is no making of a new contract in such a case. There is but the making of an instrument, either to correctly express the contract or to carry it into effect. (Civ. Code, sec. 3399; *House* v. *McMullen*, 9 Cal. App. 664 [100 Pac. 344]; *Merkle* v. *Merkle*, 85 Cal. App. 87 [258 Pac. 969].)" Section 3399 of the Civil Code provides that when through a mutual mistake of the parties a written contract does not truly express the intention of the parties, it may be revised upon the application of the party aggrieved, so as to express that intention. This section gives to the party aggrieved the right to seek the reformation of a contract under the conditions therein stated, and includes the plaintiffs in this action.

Appellants cite a number of cases, among them, *Mabb* v. *Merriam*, 129 Cal. 663 [62 Pac. 212]. In that case the contract sought to be reformed was made between J. J. Mabb and H. H. Merriam. The plaintiff in the action was J. W. Mabb who had verbally agreed to exchange lands with Merriam. A preliminary contract was drawn up by J. J. Mabb, in which he was named as the party of the first part, and in which J. W. Mabb was not mentioned. In the said agreement J. J. Mabb acted as one of the contracting parties, and whether he did it by mistake, through ignorance of law or fact, or did it with knowledge of everything, the court deemed immaterial matter. The court concluded that it could not change an agreement between J. J. Mabb and Merriam to an agreement between J. W. Mabb and Merriam; that doing so would be making a new contract and not reforming a contract already in existence. We do

not deem the cited case in point for the reason that in the instant case, no attempt is made to change the parties to the contract.

Appellant also cites the case of *Wilson* v. *Shea*, 194 Cal. 653 [229 Pac. 945, 946]. This was an action for reformation of a contract. The court sustained general and special demurrers to the plaintiff's fourth amended complaint. The contract sought to be reformed was made between John G. Shea and his wife, as the party of the first part, and C. N. Brown as the party of the second part. In the complaint the plaintiffs allege that said C. N. Brown was representing the plaintiff in the purchase of real property. It is said in the opinion of the court: "It thus appears from the foregoing averments that the instrument in writing which the plaintiff is seeking to have reformed is an instrument to which he is not on the face thereof a party, and that said plaintiff is at best but an undisclosed principal of one of the makers of such written agreement, viz., C. N. Brown. It is nowhere alleged in said complaint that said C. N. Brown in entering into said contract or in executing the same as one of the principals thereof did so by mistake, or that in signing and executing the said contract in his own name, he mistakenly supposed that he was signing and executing the same not as a principal but as an agent of said plaintiff; or that he intended in executing the same or in appending his signature thereto to act as the agent of said plaintiff, or that he believed that in so doing he was doing so as the agent of said plaintiff; nor is it anywhere set forth in said complaint that the defendants in executing said contract acted under any mistake as to who were the parties thereto, or understood or believed that the said C. N. Brown in entering into or executing said contract was acting otherwise than as a principal party thereto or was executing said contract not as a principal but as the agent of the said plaintiff. The instrument itself is neither ambiguous nor uncertain in any of the foregoing respects and is nowhere in the plaintiff's said complaint alleged to be so." In the absence of the foregoing allegations it was held that the complaint therein did not state a cause of action; that to grant the relief sought it would be to make a new contract, not to reform a contract already made. The facts of the last case, like the

preceding one cited, are dissimilar from the facts of the case at bar in that it nowhere appears in the cited cases that the plaintiff had any beneficial interest in the subject matter. In the instant case, although the policy of insurance is between the Eastman Company as the insured and the Insurance Company as the insurer, the allegations of the complaint set forth a beneficial interest therein, in favor of the plaintiffs and they are therefore entitled to maintain this action.

It is also claimed that the Eastman Company is a necessary party to this action. However, there was no demurrer or plea of a nonjoinder of said Eastman Company as a party and we think that this contention is fully answered in *Wilson* v. *Shea, supra,* where it is said: "The general rule, as stated in 34 Cyc., p. 967, is that, in actions for the reformation of agreements all persons, whose interests in the subject matter, legal or equitable, will be affected by the decree are necessary parties."

A reading of the entire record in this case discloses that the Eastman Company is not affected in any manner by the decree of the court in this action. Such being the case, the Eastman Company is not a necessary party to a determination of the issues between the plaintiffs and the defendant.

It is further contended that the evidence is insufficient to support the findings of fact, the conclusions of law and the judgment. The evidence as above stated was without conflict that the intent and the agreement of the parties was that the policy of insurance should cover Cantlay & Tanzola whether or not they were agents, employees or independent contractors while their trucks were in the service of the Eastman Company. Ogilvie, the manager of the Los Angeles branch office of the Insurance Company, so testified. That is also the effect of the testimony of Harry G. Bostwick and Joseph Tanzola. Upon its face the insurance policy does not conform to that agreement.

It further appears from the evidence of the above-named witnesses that the clause which excluded all owners of trucks except the Eastman Company from the benefit of the policy was placed there by the mistake of the defendants' representative, and when called to his attention by Cantlay & Tanzola's agent, the objectionable paragraph was elimi-

natcd by the said agent, and that after the said clause had been stricken out, the plaintiffs did not carefully read the policy upon its return, because after the elimination of the objectionable clause above stated, they had no reason to believe that there was another clause that prevented them from obtaining the insurance. In other words they were lulled into security by the very act of the agent of the Insurance Company in eliminating the clause above referred to. Ogilvie testified that he believed that the agreement was that the policy covered Cantlay & Tanzola and the fact that it did not do so was due to the mistake of the company, and also the mistake of Cantlay & Tanzola who had asked for such coverage, and the further testimony of Tanzola that he believed the policy included them in its benefit. The objection made by the Insurance Company is that the agent had no authority to change the policy to include Cantlay & Tanzola because of the provision of the policy limiting the right of any agent to change any of its provisions. But, we are of the opinion that even conceding to the Insurance Company the full force of the reservation claimed by it, two days before the issuance of the policy, their agent Ogilvie was given authority by the home office of the company to make the change. In the letter written by Ogilvie to the home office of the Insurance Company concerning the policy in dispute, he said: ''We would like to bring out one additional point, that it is the understanding on this policy that only George L. Eastman Company or employees acting as agents for George L. Eastman are covered by this policy. This means that the owner of the truck is not covered unless at the time of the claim the truck was actually being used in the service of George L. Eastman Co. This we believe has been one point in dispute regarding this policy.'' In answer to the said letter the home office telegraphed Ogilvie ''that it was satisfactory to renew the policy as per said letter''. Under these circumstancs we believe that the authority came directly from the home office of the company, through the above letter of Ogilvie and the telegram in reply thereto.

Appellant also cites the provision of the policy to the effect that it does not cover losses resulting or arising while an automobile described therein is . . . rented or leased. Appellant argues that since the truck at the time

of the accident was rented or leased by the plaintiffs to the Eastman Company, the language of said clause excludes coverage. Again referring to the evidence it is clear that the agreement was intended to cover Cantlay & Tanzola while their trucks were hired by the Eastman Company, irrespective of the form of the language used in the contract. ▮

It is also a contention of the appellants that the plaintiffs should be penalized because they failed to read the policy after it was amended.

In *California Packing Co.* v. *Larsen,* 187 Cal. 610 [203 Pac. 102], it is held that failure to read a contract does not prevent its reformation. Each case depending on the circumstances thereof. To the same effect is *Higgins* v. *Parsons,* 65 Cal. 280 [3 Pac. 881]; *Travelli et al.* v. *Bowman,* 160 Cal. 587 [89 Pac. 347]; *Sullivan* v. *Moorhead,* 99 Cal. 157 [33 Pac. 796]. The case last cited is to the same effect, but it is also said upon the question of the evidence that where the same is conflicting, it is for the trial court to decide the conflict.

In construing the contract, and as affecting the question of a mistake, the Insurance Company accepted the premiums on the policy from Cantlay & Tanzola, the premium being sufficient for the coverage claimed. The Insurance Company paid losses under the policy to Cantlay & Tanzola; they also hired attorneys to defend the actions in which the judgments, which are the subject matter of this action, were obtained. The policy of insurance under which Cantlay & Tanzola were originally insured was canceled at the request of the Insurance Company, and but for the representation of their agent that they were covered by the new policy, the old one would not have been canceled by Tanzola. Equity and fair dealing should not allow the Insurance Company to take advantage of its own wrong.

The judgment should be affirmed. It is so ordered.

Nourse, P. J., and Sturtevant, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on February 11, 1932, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 10, 1932.