[Civ. No. 5064.   Fourth Dist.   Nov. 1, 1955.]

AMERICAN SURETY COMPANY OF NEW YORK, Appellant, v. E. C. HEISE et al., Respondents.

Robert A. Cushman for Appellant.

Robert G. Beloud for Respondents.

GRIFFIN, J.—Plaintiff and appellant surety company instituted this action against defendants and respondents E. C. Heise, his minor son Edgar Loren Heise, and others, seeking to have it declared that an automobile liability policy issued on January 15, 1952, covering a 1946 Mercury, in which E. C. Heise, the father, was named as the sole owner, was void from its inception because, contrary to the declaration in the policy, he was not such sole owner. The claim is that it was defendant E. C. Heise's minor son who furnished the money, was the owner and only user of the automobile, and that it was registered in the son's name. Defendant E. C. Heise and his son filed a cross-complaint seeking reformation to include Edgar Loren Heise as named insured, and sought other declaratory relief.

It appears that on February 9, 1952, the Mercury car, while being driven by the son, was involved in a collision causing injury to its passengers and others. The complaint alleged that these other named defendants intended to assert claims against Heise and his son for damages sustained.

The answer of the Heises admits the issuance of the policy as alleged but avers that its issuance in that form was due to mutual mistake or to fraud by the surety company's agent; that the correct information was given to the agent and the policy referred to contains the name of the father because of such mutual mistake or fraud.

The court found generally: (1) That although the declaration in the policy states that E. C. Heise is the sole owner of the Mercury such declaration is untrue and that the son, a minor, is its true owner and user; (1-a) That it is not true that the company believed and relied upon the declaration that the father was the sole owner of the Mercury, and not true that the company first learned of the falsity of the declaration after the collision.

(2) It then found that the son purchased the automobile in question, and that because he was not of age the seller required the father's name on the contract. (2-a) That the

son applied to the company for the insurance in question. (2-b) That the facts of the purchase and of the ownership of the Mercury were known to the company. (3) That the policy was specially rated and issued as a "Class two risk" requiring the highest premium then in effect, and that this premium was charged for persons operating automobiles who were under the age of 21 years, and that the premium was paid by the son. (3-a) That the false information inserted in the declaration above mentioned was inserted by the plaintiff and that neither defendant made any false representations or warranty in applying for said policy, but on the contrary, the information that was brought to the plaintiff's agent at the time application was made for such insurance was true. (4) That one Levenson was the agent and employee of the company and the Heises relied upon the plaintiff and its agent for the issuance of a policy protecting them and each of them from loss or damage by reason of injury or death to any person or persons and damage to property to the limits of any financial responsibility described in said policy. (5) That at the time of making the application for automobile insurance coverage above described, they and each of them understood that the policy of insurance, when issued, would be in the names of E. C. Heise and Edgar Loren Heise and would correctly designate Edgar Loren Heise as the owner of said automobile and would provide complete coverage within the financial policy limits requested to both Edgar Loren Heise and E. C. Heise; that due to the mistake or inadvertence of the plaintiff the policy when issued contained a declaration which incorrectly designated E. C. Heise instead of Edgar Loren Heise, as the sole owner of the insured automobile, and failed to include the name of Edgar Loren Heise as the named insured; that said policy was delivered to E. C. Heise by mail, who immediately turned it over to Edgar Loren Heise, who in turn intended within a few days thereafter to discuss the omission and error in said policy with the plaintiff's agent, but was prevented from doing so by reason of the intervention of the automobile accident. (6) It then found that the company, knowing well that the son was the owner of the automobile and that the same would be in his charge, accepted the premium paid by the son at the highest rate that could be charged.

Judgment upon these findings recited that the company should reform its policy by an endorsement adding the name

of Edgar Loren Heise as the named insured from the time of its inception; that it was valid and in full force and effect at the time of the accident; and that the company has to defend the suits which may be brought against defendants and pay any judgment within the limits of the policy.

It is plaintiff's contention on this appeal that the evidence does not support findings 1-a, 2-a, a portion of 2-b reciting "that the facts of the purchase and of the ownership of the Mercury were known to the company," and findings 4, 5 and 6.

The evidence shows that Edgar Loren Heise, a school boy aged 19, on December 18, 1951, attempted to purchase an automobile from a used-car lot. He picked out the Mercury and made a deposit on it. The sales manager told him that because of his age it would be necessary for his father to come to the lot and sign the contract with him. He came the next day and with his son signed the conditional sales contract dated December 19, 1951. It had been completely filled out by the car salesman from information given by the son. The son claims he told the salesman he was to be shown as the registered owner in the application to the Motor Vehicle Department. A portion of this contract included an application for liability insurance reading: "The undersigned make joint application and order for the following insurance for six months." It then set forth the charge for such insurance and indicated "Percy Levenson, Insurance Agent or Broker." It authorized the seller to obtain such insurance.

The testimony further shows that immediately, Levenson, the agent of plaintiff, was called to the lot. Although the father was present at all times, Levenson chose to take the necessary information for the issuance of the insurance policy from the sales contract which he admitted was his practice. Apparently, the only question propounded to the father was whether anyone under 21 years of age would be driving the car and he was told that Heise's son would be driving it. Levenson did not see the son on this occasion. He stated that if [Edgar] Loren Heise's name appeared as "buyer," which it admittedly did, he overlooked it. After taking his notes from this contract, he informed the father that there was immediate coverage on the car from that moment, and departed for his office. He wrote up some form of application from his notes and said he destroyed his notes at that time; that he attempted to place this insurance with another company first, but was turned down and he subsequently wrote it on plaintiff company, with its consent, based on the appli-

cation presented. Two or three weeks later E. C. Heise received the policy, effective as of January 15, 1952. The boy said he casually read it and some questions arose in his mind as to the effective date, etc.; that he noticed it gave E. C. Heise as the owner, but since he had never obtained insurance before and was a minor he assumed that it had to be issued that way because of the fact that his father had to sign the contract of purchase with him; that it was his intention to take the policy back to Levenson on February 12, 1952, a school holiday, and have Levenson explain it to him but the accident happened before that date; that he reported the accident to Levenson and Levenson told him he was covered.

The claim of plaintiff is that under the provisions of the policy, i..e, "by its acceptance," the named insured agrees "that the statements in the declaration are his agreements and representations" and that "this policy is issued in reliance upon the truth of such representations" and that it embodies all agreements existing between himself and the company or any of its agents; that it is an express warranty and that the terms of the policy cannot be waived or changed except by endorsement, duly authorized; that the company is not estopped from claiming these rights and that accordingly, since the sole ownership of the car is stated to be in the named insured, the policy is void ad initio, if, in fact, it is owned by another. Secondly, that there was no meeting of the minds as to any claimed reformed policy, and accordingly the Heises did not make out a case for the reformation of the policy as issued, citing such authority as *Trinity Universal Ins. Co.* v. *Woody,* 47 F.Supp. 327; 29 Am.Jur. [Insurance] §§ 132, 140 and 241; *Craig* v. *United States Fid. & Guar. Co.,* 11 Cal. App.2d 644 [54 P.2d 486]; and Rest., Law of Contracts, §§ 504 and 508-a.

It is further argued that when a policy of insurance is delivered pursuant to an application therefor, the insured has the duty to examine it and, in the absence of fraud or mistake, when he accepts and retains it without protest, he is bound by its terms, citing such cases as *Mutual Life Ins. Co. of New York* v. *L. Hilton-Green,* 241 U.S. 613 [36 S.Ct. 676, 60 L.Ed. 1202]; and *Telford* v. *New York Life Ins. Co.,* 9 Cal.2d 103 [69 P.2d 835].

It is further argued that since there was no evidence of fraud practiced on the part of the agent or the company, defendants may not prevail in seeking reformation of the

policy; that even though the insurance agent may have been negligent in overlooking the fact that the contract showed both Heises as owners, the principal, plaintiff company, is not necessarily responsible since the principal is not liable for failure of its agent to obtain knowledge of that which he could have found out, which knowledge may have been relevant, citing Restatement of the Law of Agency, section 277; and *Ambrose* v. *Indemnity Ins. Co. of North America,* 124 N.J.L. 438 [12 A.2d 693].

The evidence set forth sufficiently establishes the fact that it was the intention of the Heises that they should be considered as joint owners of the automobile which was being purchased; that plaintiff's agent took the required information from the contract agreement, as written, which clearly set forth these facts; that neither the father nor the son made any other representations to the agent, and that it was solely the agent's negligence or mistake which led to the issuance of the policy in the form indicated, which policy erroneously showed E. C. Heise as the sole owner of the car. It may well be inferred that this agent did, in fact, take the information from the contract as written, present the policy to one insurance company under the given facts and the application was turned down, and that it was subsequently rewritten in the form submitted to plaintiff company. The notes of the agent and the application to this former company were destroyed by him and obviously were not obtainable to refute the inference. The judgment and the supporting findings decreeing that plaintiff company was not entitled to have the policy of insurance declared void and of no effect because of claimed misrepresentation of the insured or any other person acting for them is supported by the evidence. (*Mercer Casualty Co.* v. *Lewis,* 41 Cal.App.2d 918 [108 P.2d 65].) See also Cooley's Briefs on the Law of Insurance, vol. 3, p. 2594, which reads:

"From an examination of the cases the following propositions may be regarded as established by the weight of authority. Where the insured, in good faith, makes truthful answers to the questions contained in the application, but his answers, owing to fraud, mistake, or negligence of the agent filling out the application, are incorrectly transcribed, the company is estopped to assert their falsity as a defense to the policy."

This rule is cited with approval in *Bass* v. *Farmers Mut. Protective Fire Ins. Co.,* 21 Cal.App.2d 21 [68 P.2d 308],

and cases cited therein, including *Allen* v. *Phoenix Assur. Co.*, 12 Idaho 653 [88 P. 245, 10 Ann.Cas. 328, 8 L.R.A.N.S. 903], which latter case (quoting from the syllabus) held that:

"Where it is shown that the insured truthfully and correctly stated the nature and condition of his title in making his application for insurance, he will not be precluded from recovering in case of loss on account of a contrary statement as to title inserted in the policy by the underwriter."

The Bass case also cited *Phipps* v. *Union Mut. Ins. Co.*, 50 Okla. 135 [150 P. 1083], which held that although ordinarily a mere soliciting agent had no authority to waive any of the terms or provisions of the contract of insurance, yet if by a course of conduct he was clothed with power in taking the application and procuring the company to issue policies thereon, and to do anything necessary to take the application, he had the right to fill it out and it was his duty to do so honestly. (See also *Maxson* v. *Llewelyn*, 122 Cal. 195 [54 P. 732].)

Since the insurer, through its agent, is responsible for the omissions and/or falsity of the declarations in the policy, it cannot now directly or indirectly assert the contents of the policy against the insured to rectify its own wrong. (*Byrd* v. *Mutual Benefit Health & Acc. Assn.*, 73 Cal.App.2d 457, 464 [166 P.2d 901], quoting with approval from *Union etc. Ins. Co.* v. *Wilkinson*, 13 Wall. (U.S.) 222 [20 L.Ed. 617]; *Ames* v. *Employers Cas. Co.*, 16 Cal.App.2d 255, 266 [60 P.2d 347].)

In the instant case it has been stipulated that Levenson was the agent of the plaintiff; that at all times herein mentioned he was acting within the scope of his authority and the trial court found that knowledge of ownership of the vehicle had been made available to the agent; that he was charged with that knowledge and that it was imputed to the plaintiff. Knowledge of an agent obtained while negotiating transactions within the scope of his authority is imputed to the principal. (*Mercer Cas. Co.* v. *Lewis, supra.*)

The only remaining question of importance is the sufficiency of the evidence to support the finding that the policy should be reformed as sought by the cross-complaint to include the son as one of the assured.

It appears to be the rule that reformation of an insurance policy may be had, in general, where, by reason of fraud, inequitable conduct or mutual mistake, the policy as

written does not express the actual and real agreement of the parties. More particularly, if by inadvertence, accident, or mistake the terms of a contract of insurance are not fully or correctly set forth in the policy, it may be reformed in equity so as to express the actual contract intended by the parties, if the mistake is mutual or if there has been fraud or inequitable conduct by one of the parties to the contract. A suit for a reformation may be and usually is maintained after a loss which would fall within the policy as reformed. (29 Am.Jur. p. 237, § 241, and p. 238, § 242; *Snell* v. *Atlantic Fire & Marine Ins. Co.*, 98 U.S. 85 [25 L.Ed. 52].) ▮ The greater weight of authority is to the effect that under the facts involved the receipt and retention of an insurance policy without an examination to ascertain whether or not it conforms to the application made does not necessarily defeat the insured's right to a reformation. (29 Am.Jur. p. 244, § 253.) ▮ In the instant case the automobile dealer and plaintiff's agent were dealing with a minor school child whose father was called to the lot so as to permit the sale to the minor through the father. The minor was the one intended to be protected by the insurance, as well as the father. They made no other representations to the agent. When dealing with a minor under the circumstances here related, plaintiff may not claim that the clause set forth in the policy in relation to reading and retention of the policy by such minor is a complete estoppel by him from thereafter seeking reformation according to the agreement of the parties participating, where the mistake, if any, was due to the carelessness or negligence of plaintiff's agent.

The general principles above mentioned were considered in *Hunt* v. *Century Indem. Co.*, 58 R.I. 336 [192 A. 799, 112 A.L.R. 902]. There a Miss Loyer applied to the company agent for liability insurance "on my Chrysler car." The agent asked for her automobile registration slip and from it he obtained all the information for filling in the blanks in the printed policy. The policy contained a declaration of *complete ownership* of the car by the insured although Miss Loyer did not at any time make any such representation other than to refer to the automobile as her car, The agent admitted he did not ask her if she had complete ownership, and nothing was said about it. The company later attempted to deny liability on the policy because of the claimed misrepresentation as to complete ownership in that it later appeared that she was purchasing said automobile on contract. The appeal was

from a decree ordering reformation to express the true agreement of the parties. There the court said, at page 804:

". . . it is clear to us from the evidence that the minds of the agent of the respondent and Miss Loyer met on the agreement to issue to her a liability policy as the owner of the automobile registered in her name and described on the official registration card. The fact of *complete* ownership did not enter into the negotiations, and the agent so testified. That the policy was issued with such a term included therein was, in our opinion, clearly a mutual mistake."

It cited as authority *Houlden* v. *Farmers' Alliance Coop. Fire Ins. Co.*, 188 App.Div. 734 [177 N.Y.S. 286], affirmed in 231 N.Y. 636 [132 N.E. 919], stating:

". . . where, under a somewhat similar situation, with reference to a fire insurance policy, the court decreed reformation and went on further to say that, even if the mistake were not mutual, the plaintiff would be entitled to recover without reformation on the ground that the company would be estopped to deny the validity of the policy."

The particular findings about which plaintiff complains are adequately supported by the evidence.

Judgment affirmed.

Barnard, P. J., and Mussell, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied December 28, 1955.