LILLIE, J.
 

 —United States Fidelity and Guaranty Company (hereinafter referred to as defendant) issued a comprehensive liability insurance policy to Russell and Mary Erbes. During its term, their son Thomas, then 22 years old, while operating a 1955 Chevrolet registered to him, became involved in an accident in which plaintiffs herein were injured. They sued Russell and Thomas. Until Russell was dismissed from the action, defendant represented him, hut it denied coverage of Thomas and refused to defend him. Thomas defaulted and judgment was entered against him in favor of plaintiffs. Thereafter, Thomas assigned all of his rights against defendant to plaintiffs, whereupon, they filed this action against defendant and James Bacon and William Knight, individually, and doing business as Bacon and Knight, agents of defendant transacting the insurance business herein. The cause was heard without a jury. The trial court, finding that defendant is estopped to deny coverage of Thomas under its insurance contract with Russell, and that plaintiffs are entitled to have the same reformed to provide coverage for Thomas as a named insured, concluded that defendant breached its contract, and awarded damages to plaintiffs; and finding that, while Bacon and Knight failed and neglected to care for Thomas’ insurance needs, no damage was suffered by plaintiffs in view of their right to full recovery against defendant, ordered judgment in favor of Bacon and Knight. Only defendant appeals.
 

 Keeping in mind the rules on appeal, we briefly summarize the evidence. Bacon and Knight, the agent of defendant, had binding authority to accept insurance risks and countersign and deliver policies; since 1953 Knight handled the insurance business of Russell Erbes. On May 3, 1953, Knight procured from defendant for Russell a policy of comprehensive general automobile liability insurance covering all of his vehicles, which policy was renewed every year thereafter through the date of the accident (September 29, 1956); they were audit
 
 *411
 
 type policies. In March 1954, Thomas then 19, purchased a 1941 Chevrolet, but because of his age title thereto was registered to Russell. Russell so advised Knight and told him he wanted Thomas covered. Thereafter, at Knight’s request, by letter to the underwriting department setting out the fact that Thomas was 19 and was the “principal operator” of the 1941 Chevrolet, Russell’s policy was endorsed by defendant to list the 1941 Chevrolet and declare Thomas a Class 2C risk (pertaining to a driver under 25). A specific premium was charged for this vehicle and because of the increase Russell asked Knight to compute the amount referable to Thomas’ vehicle so that Thomas could reimburse him. Knight did so and Thomas repaid Russell accordingly.
 

 On May 3, 1954, the policy was renewed; the coverage remained the same. In June, 1954, Thomas, still under 21, traded the 1941 for a 1949 Chevrolet which was registered in the name of both Thomas and Russell. Russell so advised Knight and asked him for a policy to be issued to both of them, but Knight told him it was unnecessary because Thomas was covered under his (Russell’s) policy.
 

 This policy was renewed on May 3, 1955. It listed the 1949 Chevrolet and included a premium assessment based upon a Class 2 rating; all other vehicles listed therein bore premium charges for a Class 1 rating. Russell again asked Knight to compute Thomas’ share of the premium so that Thomas could repay him; Knight did so and wrote “Tommy— $64.10” on a slip of paper and gave it to Russell. Thomas reimbursed Russell in this amount. Thereafter, on August 15, 1955, Thomas, then over 21, traded in the 1949 model on a 1955 Chevrolet; he purchased it under a conditional sales contract. Thomas took title to the vehicle as the registered owner. Under his conditional sales contract the material damage coverage was to be obtained from the lending agency; thus several days before August 15, Thomas telephoned Knight and told him to cancel the material damage coverage because it would be included in his conditional sales contract on the new car. After trying without success to obtain liability insurance from other companies at a lower rate, Thomas went to Knight’s office and told him he was trading in his 1949 and buying the 1955 Chevrolet and wanted insurance covering the 1955 model; he asked Knight “if we could transfer the policy from the ’49 to the ’55 and receive about the same coverage; in other words, if I would be covered and it would be covered properly”; Knight answered, “Yes, it would be,” and that he
 
 *412
 
 could and would transfer the insurance. Thomas testified it was his impression that he told Knight the 1955 Chevrolet would be, or was, registered in his name. Shortly thereafter, Russell went to Knight’s office “to be sure that the insurance could be transferred and would cover the vehicle”; he asked Knight to transfer coverage and Knight said he could and would—that “it would be taken care of.” Three or four weeks later Russell was in Knight’s office and again asked Knight about coverage for Thomas; Knight told him “to quit worrying about it, that it was all taken care of, that he (Thomas) was covered.” About two weeks after August 15,1955, Thomas was involved in a minor accident with the 1955 Chevrolet for which he was not at fault; he reported it to Bacon and Knight ; there was no indication at that time, or thereafter, that he was not covered. In fact, Knight testified relative to the existence of a claim filed in connection therewith which was not paid because of questionable liability.
 

 On May 3, 1956, the policy was renewed; it gave credit for the material damage coverage deletion as of August 15, 1955, but continued to list the 1949 model and bore a premium charge for a Class 2 driver. Russell went to Knight’s office and inquired about this; he told Knight it was his intention that Thomas be covered under his policy for the 1955 Chevrolet. Knight assured Russell that Thomas was covered with respect to the 1955 vehicle, and told him the listing of the 1949 vehicle was an oversight, the policy would be retyped, and Thomas would still be insured thereunder. Russell again asked Knight for a breakdown of the premium to compute Thomas ’ share; accordingly, Knight gave Russell the figure of $69.80, as referable to Thomas’ vehicle; this amount Thomas repaid to Russell.
 

 After Thomas’ accident (September 29, 1956), defendant notified him he had no coverage under any policy of insurance issued by it, and refused to defend him; liability was denied on the ground that Thomas was operating a vehicle registered to himself. It refunded to Thomas the premium referable to the 1955 Chevrolet back to May 3, 1956 (it made no refund for the period from August 15, 1955, to May 3, 1956). No policy in fact was issued, either to Thomas or to Russell, which by its terms covered Thomas in the operation of his 1955 Chevrolet on September 29, 1956; Thomas was not a named insured in Russell’s 1956-57 policy.
 

 Knight testified that he knew the 1949 model was being traded by Thomas for the 1955 Chevrolet; and, while he could
 
 *413
 
 not recall any specific conversation with Thomas relating to liability coverage, he admitted in his testimony that he understood it was the Brbes’ desire to have the coverage transferred from the 1949 to the 1955 vehicle. He further testified that it was his intention to effect such transfer and he thought he had done so until informed to the contrary by defendant after the accident.
 

 Appellant contends that inasmuch as Thomas was not a named insured in Russell’s insurance policy, the judgment must be reversed, for unsupported by the evidence are the lower court’s findings that it was estopped to deny it had contracted to and did insure Thomas (Finding of Fact XIII), and that due to mutual mistake of the parties, plaintiffs are entitled to have the policy reformed to extend coverage to Thomas. (Finding of Fact XV.) It suggests that the only basis of estoppel was its agent’s knowledge that Thomas owned the successive vehicles and was the principal user thereof; and argues that since there was no understanding that Thomas would be covered after May 1956, and Knight did not know Russell was not the registered owner of the 1955 Chevrolet and Thomas was married and living apart from Russell, that Knight lacked full knowledge of the true facts, precluding estoppel.
 
 (Martin
 
 v.
 
 Alcoholic Beverage Control Appeals Board,
 
 52 Cal.2d 238 [340 P.2d 1].)
 

 It is conceded that the policy delivered to Russell does not by its terms extend coverage to Thomas,- and if plaintiffs are to recover it must be on the basis of estoppel and reformation of the contract. However, in the record before us there is a clear showing of a factual basis for the application of the doctrine of estoppel, and a mutual mistake of the parties entitling plaintiffs to reformation of the policy to supply the coverage Russell and Thomas had requested, and Knight, defendant’s agent, had promised and represented he had obtained for Thomas. The evidence, necessarily viewed in a light most favorable to the challenged finding (XXIII)
 
 (Bancroft-Whitney Co.
 
 v.
 
 McHugh,
 
 166 Cal. 140 [134 P. 1157]), clearly establishes:
 

 that Bacon and Knight was the agent of defendant and, at all times herein, was acting within the scope of its authority;
 

 that on each occasion Thomas acquired a ear, Knight knew he was the owner thereof; that in particular Knight knew Thomas traded in the 1949 on the 1955 Chevrolet, which he was buying under a conditional sales contract;
 

 
 *414
 
 that Knight knew Thomas was the principal operator of each car;
 

 that on each occasion Knight knew Thomas’ age and the registered owner of each car; in particular, that the 1955 Chevrolet was registered to Thomas;
 

 that in connection with each of Russell’s policies, Knight knew that Thomas reimbursed Russell for that portion of the premium referable to his car; he not only computed the difference on each occasion, but testified he knew Russell was collecting the premium from Thomas—“he always did that”; Russell “would come in and get a breakdown on the fee”; while there is no evidence that defendant was ever told this, the knowledge of its agent, obtained while negotiating insurance transactions within the scope of his authority, is imputed to it.
 
 (Mercer Cas. Co.
 
 v.
 
 Lewis,
 
 41 Cal.App.2d 918 [108 P.2d 65];
 
 Truck Ins. Exchange
 
 v.
 
 Industrial Acc. Com.,
 
 36 Cal.2d 646 [226 P.2d 583];
 
 Eagle Indem. Co.
 
 v.
 
 Industrial Acc. Com.,
 
 92 Cal.App.2d 222 [206 P.2d 877]);
 

 that in connection with Russell’s 1955 policy, both Thomas and Russell repeatedly requested coverage of the 1955 Chevrolet ; Knight promised each he would insure Thomas, thereafter represented that Thomas was covered in Russell’s policy, and computed Thomas ’ share of the premium due thereunder; and when Thomas had a minor accident in 1955 and it was reported by him to Bacon and Knight, neither it nor defendant ever indicated that he was not covered; and,
 

 that with reference to Russell’s 1956 policy (renewed May 3, 1956), all parties (Knight, Russell and Thomas) intended coverage for Thomas, in fact, they all thought Russell’s policy so provided; after Russell again told Knight it was his intention that Thomas be covered under his policy for operation of the 1955 model, Knight assured him that Thomas was covered thereunder; defendant assessed a premium for coverage on Thomas’ car under Russell’s policy knowing that it was in turn paid by Thomas, and Knight computed the same so that Russell could be reimbursed by Thomas; this amount was in fact refunded to Thomas after the accident; and Knight understood it was the desire of Russell and Thomas to have the liability coverage transferred from the 1949 to the 1955 Chevrolet, it was Knight’s intention “to do that,” and he thought he had done so until advised to the contrary by the company after the accident.
 

 Appellant’s argument that Knight did not know the 1955 Chevrolet was registered to Thomas and that Thomas had
 
 *415
 
 married and moved from the farm (from which, appellant claims, it might be inferred that Thomas was still living with Bussell who was buying the car for him), is not borne out by the evidence. From the clear proof of Knight’s direct knowledge of the history, ownership, registration, acquisition and coverage of Thomas ’ various vehicles, and the care with which Bussell informed Knight of the facts pertaining to each vehicle on each occasion, there can hardly be any other reasonable inference than that Thomas himself was buying the 1955 Chevrolet, just as he had done twice before, and that, being over 21, the car was registered to him. In addition to this inference is the direct testimony of Thomas that just before he purchased the 1955 vehicle he told Knight he was trading in his 1949 and buying the 1955 model; that in talking to Knight about cancellation of the material damage coverage, he referred specifically to the conditional sales contract; and that it was his impression that he told Knight the 1955 would be, or was, registered to him. In any event, in consideration of the conceded importance of an agent’s knowledge of the name in which a vehicle he intends to cover is registered, and in view of the Erbes’ right to rely upon him and that he would be properly informed on all matters relating to their insurance requests before acting thereon, the facts they brought to Knight’s attention certainly cast upon him the duty to inquire into all matters pertinent to the transaction.
 
 (Golden Gate Motor Transport Co.
 
 v.
 
 Great American Indem. Co.,
 
 6 Cal.2d 439 [58 P.2d 374].) The evidence shows, and the trial court found, that Knight failed and neglected to take care of the matter for Thomas; the loss should not be borne by him. The claimed inference (that Bussell was buying the 1955 Chevrolet for Thomas) from Knight’s lack of knowledge that Thomas had married and moved away from home, even if reasonable, no more than created a factual conflict in the evidence which was resolved by the trial court in plaintiffs’ favor. Nor is there anything in the record to show that either Bussell or Thomas misrepresented Thomas’ marital status or abode, or was asked about it, or had any reason to think it material; further, Knight’s testimony shows that even had he such information, there would have been no difference in the premium rate, and if so, or if errors in classification resulted therefrom, such premium charge or error could be corrected by an endorsement or at the time of audit when the policy was renewed. The testimony of defendant’s witness, Sanders, estab
 
 *416
 
 listed that in any event such discrepancies would not “void coverage.”
 

 Under the principles laid down in
 
 American Surety Co.
 
 v.
 
 Heise,
 
 136 Cal.App.2d 689 [289 P.2d 103];
 
 Mercer Cos. Co.
 
 v.
 
 Lewis,
 
 41 Cal.App.2d 918 [108 P.2d 65];
 
 Bass
 
 v.
 
 Farmers Mutual Protective Fire Ins. Co.,
 
 21 Cal.App.2d 21 [68 P.2d 302]; and
 
 Golden Gate Motor Transport Co.
 
 v.
 
 American Indem. Co.,
 
 6 Cal.2d 439 [58 P.2d 374], we conclude— where, as here, one, while negotiating for coverage with the insurer’s agent, properly brought all of the material facts relative to the transaction to his attention and specifically requested insurance coverage based thereon, was assured by the agent that such coverage could be, would be, and had been effected, and relied upon the agent’s representation with the latter’s knowledge, but through the agent’s failure and neglect actually was not covered—that the insurer, chargeable with the knowledge and acts of its agent, may be estopped thereafter to rely upon the existence of those facts to deny or defeat coverage.
 

 Appellant also says that the evidence fails to support any intention that Thomas be a named insured on Bussell’s policy, thus there was no basis for reformation and the lower court in effect made a new contract for the parties.
 
 (Lemoge Electric
 
 v.
 
 County of San Mateo,
 
 46 Cal.2d 659 [297 P.2d
 
 638]; Bailard
 
 v.
 
 Marden,
 
 36 Cal.2d 703 [227 P.2d 10].) The trial court found that due to mutual mistake, Russell’s policy did not conform to the agreement of the parties and to the coverage which had been represented to be in effect, and that the mistake consisted of the belief that no material change in circumstances had occurred which would prevent Thomas from continuing to enjoy insurance protection under the policy issued to Russell. (Finding of Fact XV.)
 

 We deem it unnecessary to recount in detail the abundant evidence in support of this finding, but even Knight’s testimony reveals that it was the intention of all of the parties to effect liability insurance coverage for Thomas with respect to the 1955 Chevrolet in both of Russell’s policies (1955, 1956). He testified that he understood it was the desire and intention of the Erbes to have the coverage transferred from the 1949 to the 1955 model, that it was his intention to effect such a transfer and that he thought he had done so until informed to the contrary after the accident. The testimony of Russell and Thomas is replete with requests to Knight that Thomas be covered and Knight’s promises to effect such cover
 
 *417
 
 age and representations that he had done so. Even defendant must have believed it insured Thomas in Russell’s policy for it accepted the increased premium referable to Thomas’ car, its agent apportioned the amount for Russell for reimbursement purposes, and after the accident, defendant company refunded the same to Thomas. Further, Knight testified that had he known the true facts relative to the ownership of the 1955 vehicle “he would have gone ahead and taken care of his (Thomas’) insurance needs on that car,” and would “have taken an application and written a policy for Tommy Erbes in his own name” for defendant. The testimony of Russell and Thomas shows that both advised Knight of the facts relating to the ownership and registration of the 1955 Chevrolet and that neither was aware of any circumstance which would prevent Thomas from continuing to enjoy insurance protection under Russell’s policy; they were never told anything to the contrary and they relied entirely upon Knight’s assurances and representations. If, as claimed by appellant, Knight believed the 1955 Chevrolet was registered to Russell, had Knight exercised due care in the transaction, Thomas would have been covered by an endorsement to Russell’s policy; had he in fact known the vehicle was registered to Thomas he was still negligent, for defendant took his premium and gave him coverage under no policy—his own or Russell’s. And contrary to appellant’s suggestion, the trial judge did find Bacon and Knight negligent, and properly so, but released them from liability only on the theory that the plaintiffs suffered no damage by it in view of their right of recovery against defendant. The omission of Knight to cover the interests of Thomas under the instant circumstances is sufficient ground for reformation of the insurance contract to conform to the true intent of the parties.
 
 (National Auto & Cas. Co.
 
 v.
 
 Industrial Acc. Com.,
 
 34 Cal.2d 20, 24 [206 P.2d 841];
 
 Gillanders
 
 v.
 
 Da Silva,
 
 212 Cal. 626 [299 P. 722];
 
 American Surety Co.
 
 v.
 
 Heise,
 
 136 Cal.App.2d 689 [289 P.2d 103];
 
 Cantlay
 
 v.
 
 Olds & Stoller Inter-Exchange,
 
 119 Cal.App. 605 [7 P.2d 395].)
 

 The evidence is clear that after May 3, 1956, Knight again represented that Thomas was covered in Russell’s policy. But even if this had not been established, the negotiations Russell and Thomas carried on with Knight during the term of Russell’s 1955 policy relative to coverage of Thomas’ ear would, according to the normal practice followed by the agent under the audit type policy, not become a part of the written
 
 *418
 
 policy until its renewal on May 3, 1956. Thus, in any event, plaintiffs were entitled to have the 1956 policy reformed inasmuch as that was the one in effect at the time of the accident and the one executed as the result of the oral agreement of the parties in August 1955.
 

 Appellant’s contention that the judgment is defective—in that while it declares plaintiffs are entitled to reformation of the insurance contract, it does not order a reformation before awarding damages—has no merit. Where the same court administers both law and equity, recovery may be had without a decree of reformation first obtained, if the facts are adequately pleaded for the reformation of the contract relied upon for recovery, and proved.
 
 (Logue
 
 v.
 
 Duchene,
 
 185 Minn. 337 [241 N.W. 51].) Herein the trial judge made proper findings relative to reformation (Findings of Fact XIV, XV, XXII), amply supported by evidence offered under adequate pleadings, and concluded: “Plaintiffs are entitled to have Policy CLP 32345 (1956 contract) reformed so as to provide coverage to Thomas Erbes as a named insured covering the operation, maintenance or use of the 1955 Chevrolet pick-up truck owned by him to limits of $25,000 for one person and $50,000 for more than one person injured in said accident.” (Conclusions of Law 1.) Under these circumstances we deem it unnecessary to have the contract reformed before judgment can be rendered thereon.
 

 The judgment is affirmed.
 

 Wood, P. J., and Fourt, J., concurred.
 

 A petition for a rehearing was denied July 27, 1962, and appellant’s petition for a hearing by the Supreme Court was denied August 29, 1962.