The **MORNING STAR PACKING COMPANY, L.P.; California Fruit and Tomato Kitchens, L.L.C., fna California Fruit Packing Company, L.L.C., Plaintiffs–Appellants,**

v.

**CROWN CORK & SEAL COMPANY (USA), INC., Defendant–Appellee.**

No. 06–15110.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 6, 2007.

Filed Dec. 10, 2008.

Trager, District Judge, filed dissenting opinion.

* The Honorable David G. Trager, Senior United States District Judge for the Eastern District of New York, sitting by designation.

Dale C. Campbell, Weintraub Genshlea Chediak & Sproul, Sacramento, CA, D. Greg Durbin, Todd W. Baxter, McCormick Barstow Sheppard Wayte & Carruth, LLP, Fresno, CA, for Plaintiffs–Appellants.

William H. Armstrong, Armstrong & Associates LLP, Oakland, CA, for Defendant–Appellee.

Before: FERNANDEZ and McKEOWN, Circuit Judges, and TRAGER,* District Judge.

**MEMORANDUM ****

Morning Star Packing Company, L.P. and California Fruit and Tomato Kitchens,

** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

L.L.C. appeal the district court's judgment in favor of Crown Cork & Seal Company (USA), Inc. We affirm.

■ (1) Principally, Morning Star and California Fruit assert that the district court erred when it rejected their request for reformation to add (or effectually substitute) California Fruit as a party to an agreement that tolled the statute of limitations as to Morning Star only. Under California law, there was no error. We review the district court's denial of leave to amend the agreement in dispute under an abuse of discretion standard. The district court's reliance on longstanding California law was not an abuse of discretion. In the pithy, and now sadly lost, style of earlier days, the California Supreme Court decided a case which controls the result in this one. *See Mabb v. Merriam*, 129 Cal. 663, 62 P. 212 (1900). In *Mabb*, the plaintiff, J.W. Mabb, a married woman, verbally agreed with H.H. Merriam to exchange lands. *Id.* at 664, 62 P. at 212. J.W. Mabb's husband, J.J. Mabb, then "attended to the drawing up of the preliminary contract." *Id.* Alas, the wife, J.W. Mabb, was not even mentioned; rather, the husband, J.J. Mabb, who apparently had no interest in the property, was made the party to the contract and he entered "into many covenants to perform, etc." *Id.* Both Mabbs sued, and J.W. Mabb sought "to have the contract reformed by having her name inserted" as the true party in question in place of J.J. Mabb. *Id.* The court made short shrift of that argument and stated:

> While a court of equity will reform contracts under many varying circum-

stances, still it has no power to make a new contract. Its power is simply to reform a contract already made. J.W. Mabb is not a party to the contract, and a court of equity can neither add additional parties nor substitute other parties for those already appearing upon the face of the writing. J.J. Mabb acted as one of the contracting parties, and whether he did it by mistake, through ignorance of law or fact, or did it with knowledge of everything, we deem an immaterial matter.

*Id.*

That case controls the issue at hand because California Fruit, for all practical purposes, seeks to have itself substituted for Morning Star, the actual party to the contract, or at the very least, it seeks to have itself added as a party to the contract.[1]

■ (2) Morning Star and California Fruit also sought leave to add a claim for equitable estoppel in order to preclude Crown Cork from asserting a statute of limitations defense as to any California Fruit claim. However, there simply was no pleading of any false representations upon which Morning Star and California Fruit could have relied. *See Lantzy v. Centex Homes*, 31 Cal.4th 363, 384, 2 Cal. Rptr.3d 655, 73 P.3d 517, 533 (2003). Certainly, the fact that Crown Cork engaged in settlement negotiations with one or both of them would not suffice to constitute the kind of activity that would permit an equitable estoppel. *See Jackson v. Andco Farms, Inc.*, 130 Cal.App.3d 475, 479–80, 181 Cal.Rptr. 815, 818 (1982); *Kunstman*

---

1. Perhaps the law should now be otherwise, but the holding is both clear and applicable. We must leave it to the California Supreme Court to dispatch its own opinion to the dustbin of legal history, if it is so minded. *Cf. Tenet v. Doe*, 544 U.S. 1, 10–11, 125 S.Ct. 1230, 1237, 161 L.Ed.2d 82 (2005) ("[T]he Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions." (quoting *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484, 109 S.Ct. 1917, 1921–22, 104 L.Ed.2d 526 (1989))).

*v. Mirizzi*, 234 Cal.App.2d 753, 757–58, 44 Cal.Rptr. 707, 710 (1965). The district court did not err when it denied leave to add that valetudinarian claim.

(3) California Fruit's assertion that it did comply with the requirement that it file within the period prescribed by the statute of limitations must also fail. True, in California the usual statute of limitations for breach of a written contract is four years. Cal.Civ.Proc.Code § 337. But a sales contract can reduce that to one year. *See* Cal. Com.Code § 2725. This one did. By its terms, that contractually reduced statute of limitations applied to this dispute. Moreover, the mere fact that the provision was not mutual does not serve to invalidate it. *See Capehart v. Heady*, 206 Cal.App.2d 386, 390, 23 Cal. Rptr. 851, 854 (1962). Finally, it is plain that the mere sending of demand letters to Crown Cork did not serve to comply with the strictures imposed by the contractual statute of limitations; those required the actual bringing of a timely claim or action. Again, the district court did not err.

(4) Finally, the district court correctly granted summary judgment against Morning Star. Absent damages for breach of contract, Morning Star had no actionable claim. *See First Commercial Mortgage Co. v. Reece*, 89 Cal.App.4th 731, 745, 108 Cal.Rptr.2d 23, 33 (2001); *see also Fox v. Citicorp Credit Servs., Inc.*, 15 F.3d 1507, 1517 (9th Cir.1994) (finding similarly under Arizona state law). But, as Morning Star admitted, it suffered no damages of its own on account of the alleged breach by Crown Cork.

AFFIRMED.

TRAGER, District Judge, dissenting:

I respectfully dissent.

Although neither party contests that California Fruit was meant to be a party to the agreement, the majority believes that *Mabb v. Merriam*, 129 Cal. 663, 62 P. 212 (1900), a case decided by the California Supreme Court over a hundred years ago, precludes reforming the Tolling Agreement to add California Fruit as a party. I do not believe that *Mabb* dictates this unjust outcome. *Mabb*, in my view, is both distinguishable from the present case and has been undermined by later developments in California law. Subsequent California Supreme Court cases strongly indicate that *Mabb* would not be decided in the same way today. *Mabb* is also against the current trend of the law as reflected in the decisions of intermediate California courts, which have been willing to reform contracts in analogous circumstances—often ignoring *Mabb's* relevance.

More important, however, is that *Mabb* is now being used to reward conduct by attorneys that, even in the rough and tumble of the business world, would find few supporters. Zealous advocacy on behalf of a client is no excuse for unethical conduct which should not be sanctioned by this Court.

(1)

Crown does not argue that the Tolling Agreement as written reflects the intent of the parties. Rather, it argues that adding a party who was mistakenly omitted from a contract amounts to making a new contract. Thus, argues Crown, appellants' counsel's drafting mistake cannot be remedied by reformation of the Tolling Agreement to add California Fruit under California law.[1]

---

1. Crown emphasizes in its brief that appellants' counsel was responsible for the drafting error, even though the second amended complaint describes the mistake without assigning blame. It is, however, immaterial who wrote the Tolling Agreement, provided all parties

California has codified reformation for mistake or fraud:

WHEN CONTRACT MAY BE REVISED. When, through fraud or a mutual mistake of the parties, or a mistake of one party, which the other at the time knew or suspected, a written contract does not truly express the intention of the parties, it may be revised on the application of a party aggrieved, so as to express that intention, so far as it can be done without prejudice to rights acquired by third persons, in good faith and for value.

Cal. Civ.Code § 3399 (enacted 1872).

While § 3399 does not permit a court to make a new contract for the parties, it does have the power to reform the writing "to conform with the mutual understanding of the parties at the time they entered into it, if such an understanding exists." *Hess v. Ford Motor Co.*, 27 Cal.4th 516, 524, 117 Cal.Rptr.2d 220, 41 P.3d 46 (2002) (citing *Bailard v. Marden*, 36 Cal.2d 703, 708, 227 P.2d 10 (1951)). In addition, parol evidence is "admissible to show mutual mistake even if the parties intended the writing to be a complete statement of their agreement [because] the court must divine

the true intentions of the contracting parties and determine whether the written agreement accurately represents those intentions." *Id.* at 525, 117 Cal.Rptr.2d 220, 41 P.3d 46.

Despite the broad language of Cal. Civ. Code § 3399, which on its face would clearly permit relief here, the Supreme Court of California in *Mabb* refused to reform a contract to add a new party or to substitute a new party for one already appearing on the face of the contract. *Mabb v. Merriam*, 129 Cal. 663, 664, 62 P. 212 (1900).[2]

At the outset, it should be noted *Mabb* makes no mention of Cal. Civ.Code § 3399, although the statute had been law for more than three decades at the time *Mabb* was decided. At least one commentator has argued that *Mabb* and *Wilson* do not support the broad proposition "that a person cannot be made a party to a contract by reformation," and that "[t]his kind of reformation should be available on the same basis as any other kind." *See* 5 Witkin Cal. Proc. Plead § 765 (2006). Indeed, the California Supreme Court has permitted reformation to correct equally fundamental contract drafting mistakes.[3]

mistakenly believed that California Fruit was included in it. *See Renshaw v. Happy Valley Water Co.*, 114 Cal.App.2d 521, 524–25, 250 P.2d 612 (Cal.Dist.Ct.App.1952) ("[I]t makes no difference who wrote the instruments to be reformed so long as all parties were in common mistake as to what was contained therein.").

**2.** In *Wilson v. Shea*, 194 Cal. 653, 657–58, 229 P. 945 (1924), the California Supreme Court followed Mabb in refusing to allow an action for reformation of a contract to substitute the name of an undisclosed principal for that of his agent. That case, however, is readily distinguishable from the present case. The court there noted that there was no allegation that the other party to the contract knew that the agent was acting on behalf of anyone else when he executed the contract. *Id.* at 657, 229 P. 945. In addition, reforma-

tion in that circumstance would have worked an injustice against the other party, who could seek recourse against both the agent and undisclosed principal under the unreformed contract but only against the principal under the proposed reformed contract.

**3.** The Magistrate Judge found appellants' proposed second amended complaint deficient for failure to plead mistake with particularity, citing Fed.R.Civ.P. 9(b). The proposed second amended complaint alleges that Crown knew that California Fruit was the real party in interest; that it knew that appellants' attorney used the names Morning Star and California Fruit interchangeably in correspondence; and that the purpose of the Non Disclosure Agreement ("NDA") and Tolling Agreement was to allow California Fruit to provide its confidential information to Crown so that the parties could discuss settlement, but due to a

Thus, in *Oatman v. Niemeyer*, 207 Cal. 424, 427, 278 P. 1043 (1929), the court affirmed the judgment of the trial court granting reformation of a deed which mistakenly omitted a description of the real property at issue. The plaintiff had been hired as a nurse and housekeeper, in consideration for which she was to be deeded all of her employer's property upon his death. Her employer had a deed prepared which granted plaintiff "all the certain lot, piece or parcel of land situate, lying and being in the city of Wheatland, County of Yuba, State of California, and bounded and particularly described as follows, to-wit:," but no description of the property followed. The trial court found that the employer owned only one parcel of real property. In reforming the deed to include a description of the property, the court, sitting *en banc*, noted: "There is no making of a new contract in such a case. There is but the making of a new instrument, either to correctly express the contract or to carry it into effect." *Id.*

Following *Oatman*, the California Supreme Court allowed reformation of a contract for purchase of real estate to add the amount of a broker's commission and the broker's name. *Calhoun v. Downs*, 211 Cal. 766, 770, 297 P. 548 (1931). In *Calhoun* the complaint alleged that the sellers had listed their property with the broker and employed him to sell their property, agreeing to pay him a commission of 5% or $500, and that the broker had found a buyer willing to pay the asking price. Once reduced to writing, however, the agreement mistakenly omitted the broker's name and the amount of the commission, such that the last line of the agreement read: "I agree to pay a commission of $____ to ____." Citing *Oatman*, the court held that it had the power to reform such a mistake.[4]

More recently, in 2002, the California Supreme Court affirmed the reformation of a settlement agreement to strike certain language where the release, which was made with a different defendant, inadvertently released all other tortfeasors from liability. *Hess v. Ford Motor Co.*, 27 Cal.4th 516, 527, 117 Cal.Rptr.2d 220, 41 P.3d 46 (2002).

Although the *Oatman, Calhoun*, and *Hess* cases indicate a growing willingness on the part of the California Supreme Court to extend its powers of reformation to remedy fundamental drafting errors in a contract, they do not go so far as to add

mutual or unilateral mistake, known or suspected by Crown, California Fruit was not made a signatory to either the NDA or the Tolling Agreement. These facts, as pled, are sufficient to show that the parties intended to include California Fruit in the NDA and Tolling Agreement, but that it was omitted due to a drafting error. Indeed, it is the rare case that is dismissed with prejudice for failing to plead mistake with particularity. *See Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 683 (7th Cir.1992) (Posner, J.) (finding only two cases in the previous half century in which a complaint was dismissed for failure to plead mistake with particularity and noting the lack of any rationale for the rule). Accordingly, the Magistrate Judge abused his discretion when he denied leave to amend for failure to allege mistake with particularity.

4. The Magistrate Judge distinguished *Calhoun* on the basis that the contract in *Calhoun* included unfilled blanks, whereas the Tolling Agreement did not. The presence of blanks, however, is simply evidence of the parties' intent to include a commission provision. Had the Tolling Agreement included a blank for California Fruit's representative to sign, the parties' intent to include California Fruit as a party would have been manifest, but the absence of a blank does not negate appellants' claims of intent. This is particularly so here, where Crown does not dispute that the parties intended to include California Fruit in the Tolling Agreement.

new parties to contracts. Crown argues that, as a non-party to the contract, California Fruit's intent may not be taken into account for purposes of reformation, and that adding California Fruit as a party would be to make a new contract altogether. However, relief under Cal. Civ.Code § 3399 has not been restricted by California's intermediate appellate courts to the parties named on the contract. In *Shupe v. Nelson*, 254 Cal.App.2d 693, 62 Cal.Rptr. 352 (Cal.Ct.App.1967), the California Court of Appeal held that subsequent purchasers of property had standing to seek reformation of a deed to provide access to a roadway. The court noted that "[t]he right to reformation of an instrument is not restricted to the original parties to the transaction." *Id.* at 698, 62 Cal.Rptr. 352. Rather, any party "who has suffered prejudice or pecuniary loss" may seek reformation of a contract under Cal. Civ.Code § 3399 as an aggrieved party.[5] *Id.*

In addition, Crown's argument that, as a non-party to the Tolling Agreement, California Fruit could not have been party to a "meeting of the minds" ignores the fact that Mr. Rufer, who signed the Tolling Agreement on behalf of Morning Star, also had authority to sign on behalf of California Fruit. The only difference between the Tolling Agreement as drafted and the Tolling Agreement as appellants seek to reform it would be the addition of California Fruit's name as a party and a second signature line for Mr. Rufer to sign, as was the case with the Supply Agreement. Accordingly, California Fruit's intent is relevant and its status as a non-party to the Supply Agreement does not disqualify it from seeking reformation.

In addition, since *Mabb*, intermediate appellate courts have been quite willing in a number of cases to reform contracts to add or substitute the name of an intended beneficiary, or to otherwise change the parties' insurance coverage to reflect the parties' intent. *Am. Surety Co. of New York v. Heise*, 136 Cal.App.2d 689, 694, 289 P.2d 103 (Cal.Dist.Ct.App.1955) is particularly analogous here, as it makes clear that reformation is permitted to add someone who was intended to be a party to an insurance policy, but was mistakenly omitted. *Heise* involved an action by a surety company to declare a car insurance policy, naming the father as the sole owner, void from its inception. The son and father

---

5. A case with similar facts essentially rejected Mabb. *Regency Centers, L.P. v. Civic Partners Vista Village I, LLC*, No. G038095, 2008 WL 2358860, at *14 (Cal.Ct.App. June 11, 2008) (unpublished opinion). In *Regency*, the court held that Mabb is inapplicable since it "did not involve judicial reformation as a result of the parties' mutual mistake or the mistake of one party known or suspected by the other, and did not otherwise analyze Civil Code section 3399." *Id.* at 14. The court ultimately found that *Mabb* did not apply to this situation since the agreement was governed by Delaware law. The court further found that even if California law applied, Civil Code Section 3399 allows the contract to be reformed. The case involved an agreement between Civic Partners Vista Village I, LLC ("Civic") and Regency Realty Group (RRG) in which RRG agreed to provide financing and management services for a project, and also received the option to buy out Civic's interest in the project upon the fulfillment of certain conditions. RRG later transferred its interest under the agreement to its affiliate, Regency Centers, L.P. (RCLP). The managing director of RCLP and RRG sent Civic a letter on RCLP letterhead stating: "please allow this correspondence to serve as written notice of RRG's decision to exercise the Option pursuant to Section 14 of the Agreement." *Id.* at 13. In its analysis, the California Court of Appeal noted that: (1) the parties continued referring to RRG's interest in the company, even after the transfer of the interest to RCLP; (2) Civic never argued that the reference to RRG was a typographical error as concluded by the trial court; and (3) Civic never argued that it did not understand that the notice of intent to exercise the option was on behalf of RCLP.

sought to reform the insurance policy to include the son as a named insured.

The son and father argued that the insurance policy named only the father as the owner of the car due to either mutual mistake or fraud by the surety company's agent. The son, who was nineteen years old at the time, went to purchase the car, picked out the model he wanted and made a deposit. He was told by the sales manager that because of his age his father, who was not present, would have to sign the sales contract with him. The contract was completely filled out by the car salesman, and the son told the salesman that he was to be the registered owner of the car. In drafting the insurance policy, the surety company's agent took all of the necessary information directly from that contract. The court found that it was the son and father's intention that they be considered as joint owners of the car and that neither the son nor the father made any other representations to the agent. Thus, it was the agent's error that the policy listed the father as the sole owner of the car. The court, therefore, affirmed the reformation of the insurance policy to include the son as an insured, reasoning that "[t]he minor was the one intended to be protected by the insurance, as well as the father." *Heise*, 136 Cal.App.2d at 696, 289 P.2d 103. Like the father in *Heise* who neither purchased the car nor intended on driving it, Morning Star had no interest in any of the cans that Crown was to provide under the Supply Agreement and was only made a party to that agreement to ensure California Fruit's performance. Moreover, like the insurance policy which was only entered into to protect the son, the Tolling Agreement was only entered into to protect California Fruit. Refusing to permit reformation is thus not only unjust, but illogical, as it would mean that the Tolling Agreement served no purpose whatsoever. More relevant to the issue here is that,

despite *Mabb*, the son in *Heise* was considered by the court to be a party to the insurance contract and not merely a third party beneficiary.

In another case involving insurance policies, *Cantlay v. Olds & Stoller Inter–Exchange*, 119 Cal.App. 605, 613, 7 P.2d 395 (Cal.Dist.Ct.App.1932), the California District Court of Appeal affirmed reformation to add individuals who were mistakenly omitted as being covered under the policy. While this case differs from the present case in that *Cantlay* only sought to change beneficiaries who were not the direct parties, the point is that non-parties to a contract were able to seek reformation. It makes no sense to say that third persons have standing for reformation while someone who unquestionably was intended to be a party to the contract does not.

In sum, it has been over a century since the Supreme Court of California directly addressed the question of whether a party mistakenly omitted from a contract may be added through reformation, and although *Mabb* addresses the question squarely, later cases by the Supreme Court of California and the California intermediate appellate courts undermine its authority. The majority opinion acknowledges that "[p]erhaps the law should now be otherwise," but ultimately leaves it up to the California Supreme Court to "dispatch its own opinion to the dustbin of legal history." *Maj. Op.* at n. 1. In light of the liberal approach taken by California courts in the past half century toward reformation of contracts to correct fundamental drafting mistakes, I do not think that we have to wait until the California Supreme Court explicitly permits the reformation of a contract to add a party to correct the injustice that is occurring here, particularly where the mistaken omission was due to a drafting error and where, as here, the party resisting reformation does not dispute that the omitted

party was intended to be included in the contract. At bottom, appellants are not asking the court to make a new contract; they are asking that the Tolling Agreement be reformed to reflect the parties' intent at the time they executed it.

### (2)

I turn now to the most disturbing aspect of this case. When the leaders of the law decry the public's low opinion of our profession, and especially its ethics, they should understand that the "gotcha" tactic employed by counsel here provides ample support for the public's belief.

There are two possible explanations for the omission of California Fruit from the Tolling Agreement. Either Crown's lawyer was equally mistaken about the identities of the parties to the Tolling Agreement, in which case Cal. Civ.Code § 3399 allows for the reformation of the mutual mistake, or Crown's lawyer noticed the omission of California Fruit, and chose not to correct the mistake, in violation of his ethical duties. In either case, by trying to capitalize on this error, Crown's counsel did not act in accordance with professional standards.

The ethical obligation of Crown's counsel to represent his client zealously is not his only obligation. As a member of the legal profession, Crown's counsel also has other ethical obligations that, in this instance, required him to point out the mistake. If Crown's counsel noticed the mistake and remained silent, only to use the mistake to Crown's advantage in later litigation, Crown's counsel may have violated its ethical duties. In 1986, the American Bar Association's Committee on Ethics and Professional Responsibility issued Informal Opinion 86–1518, which addresses the very question involved here, namely, a lawyer's duty to apprise opposing counsel of the inadvertent omission of a previously agreed upon contract provision. The opinion states:

> Where the lawyer for a has received for signature from the lawyer for b the final transcription of a contract from which an important provision previously agreed upon has been inadvertently omitted by the lawyer for b, the lawyer for a, unintentionally advantaged, should contact the lawyer for b to correct the error and need not consult a about the error.

ABA Comm. on Ethics and Prof'l Responsibility, Informal Op. 86–1518 (1986).

The ABA continues:

> The client does not have a right to take unfair advantage of the error. The client's right pursuant to Rule 1.2 to expect committed and dedicated representation is not unlimited. Indeed, for A's lawyer to suggest that A has an opportunity to capitalize on the clerical error, unrecognized by B and B's lawyer, might raise a serious question of the violation of the duty of A's lawyer under Rule 1.2(d) not to counsel the client to engage in, or assist the client in, conduct the lawyer knows is fraudulent. In addition, Rule 4.1(b) admonishes the lawyer not knowingly to fail to disclose a material fact to a third person when disclosure is necessary to avoid assisting a fraudulent act by a client, and Rule 8.4(c) prohibits the lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation.

*Id.*

The Magistrate Judge's conclusion that "Crown was not compelled to point out California Fruit's omission" is not consistent with these ethics rules, at least insofar as Crown's counsel was involved in the negotiation and execution of the Tolling Agreement. While sharp dealing may be

tolerated in business, it does not conform to the professional norms that govern lawyers—or should. Indeed, I doubt that a businessman who engages in repeated similar conduct would long survive in business. It is hard to believe that, even if *Mabb* were still good law, the Supreme Court of California would countenance, much less reward, such behavior by a member of its bar.

Accordingly, because the proposed second amended complaint states a viable claim for reformation under California law, the Magistrate Judge erred in denying leave to amend.